## George W. Williams *vs.* Charles Merritt.

By an adjudication of bankruptcy under the bankrupt act, (U. S. St. 1867, *c.* 176,) even when the proceedings were begun on the debtor's voluntary petition, his property becomes exempt from subsequent attachment on mesne process.

Tort against a deputy of the sheriff of Essex, for the conversion of a horse and its harness, a carryall, a sleigh, and other chattels. Trial in the superior court, before *Lord*, J., who reported the case for the determination of this court, substantially as follows :

The plaintiff claimed title to the property under a bill of sale thereof to himself from Smith T. Downing, dated in January 1868. On February 27, 1868, Downing filed his petition for the benefit of the bankrupt act, (U. S. St. 1867, *c.* 176,) and was duly adjudged a bankrupt; but no meeting of his creditors was held, nor an assignee of his estate appointed, until March 10 1868.

On March 9, 1868, the defendant, as deputy sheriff, attached the property on a writ sued out that day against Downing; and the defendant contended that the bill of sale was executed by Downing without consideration, and for the purpose of defrauding his creditors, and that the plaintiff participated in this purpose.

" On these facts, the judge ruled that the defendant could not justify under his writ; excluded all evidence tending to impeach the plaintiff's title (it being agreed that a bill of sale was actually made and delivered, but not agreed that any delivery of the property was made); and directed a verdict for the plaintiff," under an agreement of the parties that the case should be open for the assessment of damages, if his ruling should be affirmed, otherwise the verdict to be set aside and a new trial granted.

*S. B. Ives, Jr.,* for the defendant. 1. The defendant can justify under his writ, if not prevented by the bankrupt act.

2. At the time of the attachment, Downing's legal title to his property had not been so far affected by the bankrupt act as to relieve it of liability to attachment. There had been no assignment. Hence a right of property remained in him; and gave a right of possession, both as matter of fact and matter of law, because the marshal is not authorized to take possession of the debtor's property in cases of voluntary bankruptcy. This right of property is undoubtedly a qualified right. The debtor holds his estate as trustee for his creditors; and, whatever may be his rights as against them, he as their trustee, and any one claiming through him, has a right to hold, and may justify the holding, of property claimed to be his, as against third parties, not creditors, whose interest is adverse to the estate.

It is the assignment, and not the filing of the petition in bankruptcy, that dissolves attachments on mesne process, and relieves the debtor's property from liability to such attachments. And in any event, the aim and effect of the bankrupt act is to remove the debtor's property from the hands of special creditors, and add it to the general funds of the estate for the general benefit of all creditors; and not, in the interest of strangers, and to the disadvantage of the estate, to relieve the debtor's prop-

erty, or alleged property, from attachments of which the assignee might afterwards avail himself.

*W. C. Endicott,* for the plaintiff.

GRAY, J.   If this case had arisen while our insolvent law was in force, there could have been no doubt that the ruling at the trial was in accordance with the previous decisions of this court The plaintiff, claiming title under a bill of sale from the debtor, might have maintained this action, unless the defendant could show a better title.   *Codman* v. *Freeman,* 3 Cush. 306.   *Hubbard* v. *Lyman,* 8 Allen, 520.   If indeed an attachment had been made before the institution of proceedings in insolvency, it would not have been dissolved before the assignment, and until that time the attaching officer would have retained the custody of the property attached, and, in case of a discontinuance of the insolvency proceedings before an assignment, and of a subsequent recovery of judgment, might have taken the property on execution.   *Cutter* v. *Gay,* 8 Allen, 134.   *Hill* v. *Keyes,* 10 Allen, 258.   But, upon the execution of an assignment, he would have been bound to deliver the property to the assignee on demand, and such delivery would have exempted him from liability to the attaching creditor in case of the proceedings in insolvency being subsequently annulled by the court, because commenced without due notice to the debtor.   *Penniman* v. *Freeman,* 3 Gray, 245.   Even an officer who had attached property before the commencement of the insolvency proceedings, and who, after the first publication of notice of the issuing of a warrant therein, took it on execution and sold it, and paid over the proceeds, would have been liable therefor to the assignee subsequently appointed, because the title of the latter would have related back to the time of such first publication.   *Edwards* v. *Sumner,* 4 Cush. 393.   Upon the issuing of the warrant in insolvency to the messenger, and his taking possession under it, the debtor would have been divested of his estate; and all his property, not already attached, would have been in the custody of the law, and could not have been attached after the first publication of notice, so long as the proceedings in insolvency were pending.   *Judd* v. *Ives,* 4 Met. 401.   *Gallup* v *Robinson,* 11 Gray

20. The necessary consequence would have been, that the party making an attachment pending proceedings in insolvency could not dispute the plaintiff's title on the ground of fraud. *Pomroy* v. *Lyman*, 10 Allen, 468.

So in *Perry Manufacturing Co.* v. *Brown*, 2 Woodb. & Min. 449, it was held that an attachment upon a writ from the circuit court of the United States after the first publication of notice of the issuing of a warrant under the insolvent law of Massachusetts, though before an assignment had been executed, or the property taken possession of either by the messenger or the assignee, was ineffectual.

The existing bankrupt act of the United States differs indeed from our insolvent law in not authorizing the messenger to take possession of all the bankrupt's property when the warrant is issued upon the bankrupt's own petition. But his property is not the less by the decree adjudging him a bankrupt brought within the exclusive custody and control of the court of bankruptcy. The bankrupt is held by the district court of the United States in this district to stand from that time in a fiduciary relation to his creditors. *March* v. *Heaton*, 2 Bankr. Reg. 66. And in the southern district of New York the practice is established, that, upon the bankrupt's executing the surrender which he is required by the act to make, the register takes immediate possession of his property, and may appoint custodians and make sales thereof, subject to the supervision of the court; and if the bankrupt delays to make a surrender to the register, the court will order him to do so. *In re Hasbrouck*, 1 Bankr. Reg. Suppl. xvii. *In re Vogel*, 2 Bankr. Reg. 138, and 3 Ib. 49. *In re Loder*, 2 Bankr. Reg. 162. *In re Bogert*, and *In re Shafer*, Ib. 178. The nature or comparative efficiency of the means provided by the statute to secure the property for the benefit of all the bankrupt's creditors cannot affect the operation of the adjudication of bankruptcy to bring all his assets at once into the custody of the law and prevent their subsequent attachment by one creditor for his own benefit.

The defendant cannot therefore justify under his writ; and according to the terms of the report the

*Case is to stand for assessment of damages.*