Low v. Pew.

---

ALFRED LOW & another *vs.* WILLIAM A. PEW & another.

A sale of fish hereafter to be caught in the sea does not pass title to the fish when caught.

REPLEVIN by the firm of Alfred Low & Company of a lot of flitched halibut from the assignees in bankruptcy of the firm of John Low & Son, all of Gloucester. Writ dated August 24, 1869. The parties stated the following case for the judgment of the court:

On April 17, 1869, as the schooner Florence Reed, owned by John Low & Son, was about to sail from Gloucester on a fishing

voyage, that firm received $1500 from the plaintiffs, and signed and gave the plaintiffs the following writing :

" We, John Low & Son, hereby sell, assign and set over unto Alfred Low & Company all the halibut that may be caught by the master and crew of the schooner Florence Reed, on the voyage upon which she is about to proceed from the port of Gloucester to the Grand Banks, at the rate of five cents and a quarter per pound for flitched halibut, to be delivered to said Alfred Low & Company as soon as said schooner arrives at said port of Gloucester at their wharf. And we, the said John Low & Son, hereby acknowledge the receipt of $1500 in part payment for the halibut that may be caught by the master and crew of said schooner on said voyage."

In July 1869 proceedings in bankruptcy were begun against John Low & Son in the district court of the United States for this district, in which they were adjudged bankrupts on August 6, and on August 20 these defendants were appointed the assignees in bankruptcy, and the deed of assignment was executed to them. On Saturday, August 14, the Florence Reed arrived at the port of Gloucester on her home voyage, and was hauled to the plaintiffs' wharf ; and on the morning of Monday, August 16, the United States marshal took possession of the vessel and cargo under a warrant issued to him on August 6 in the proceedings in bankruptcy, and transferred his possession to the defendants upon their appointment.

The catch of the schooner consisted of about 40,000 pounds of halibut, and of some codfish. The plaintiffs demanded the halibut of the defendants, and offered at the same time to pay the price of it at the rate of five and a quarter cents per pound, less the $1500 already paid. The defendants refused the demand ; and the plaintiffs then replevied such a quantity of the halibut as represented the amount of $1500 at that rate per pound, and offered to receive the rest of the halibut and pay for it at the same rate, but the defendants refused to acknowledge any right whatever of the plaintiffs in or to the fish.

If on these facts the plaintiffs were entitled to recover, they were to have judgment for nominal damages ; but if otherwise,

the defendants were to have judgment for a return, with damages equal to interest at the annual rate of. six per cent. on the appraised value of the fish replevied.

*C. P. Thompson*, for the plaintiffs.

*W. C. Endicott*, for the defendants.

MORTON, J. By the decree adjudging John Low & Son bankrupts, all their property, except such as is exempted by the bankrupt law, was brought within the custody of the law, and by the subsequent assignment passed to their assignees. *Williams* v. *Merritt*, 103 Mass. 184. The firm could not by a subsequent sale and delivery transfer any of such property to the plaintiffs. The schooner which contained the halibut in suit arrived in Gloucester August 14, 1869, which was after the decree of bankruptcy. If there had been then a sale and delivery to the plaintiffs of the property replevied, it would have been invalid. The plaintiffs therefore show no title to the halibut replevied, unless the effect of the contract of April 17, 1869, was to vest in them the property in the halibut before the bankruptcy. It seems to us clear, as claimed by both parties, that this was a contract of sale, and not a mere executory agreement to sell at some future day. The plaintiffs cannot maintain their suit upon any other construction, because, if it is an executory agreement to sell, the property in the halibut remained in the bankrupts, and, there being no delivery before the bankruptcy, passed to the assignees. The question in the case therefore is, whether a sale of halibut afterwards to be caught is valid, so as to pass to the purchaser the property in them when caught.

It is an elementary principle of the law of sales, that a man cannot grant personal property in which he has no interest or title. To be able to sell property, he must have a vested right in it at the time of the sale. Thus it has been held that a mortgage of goods which the mortgagor does not own at the time the mortgage is made, though he afterwards acquires them, is void. *Jones* v. *Richardson*, 10 Met. 481. The same principle is applicable to all sales of personal property. *Rice* v. *Stone*, 1 Allen, 566, and cases cited. *Head* v *Goodwin*, 37 Maine, 181.

It is equally well settled that it is sufficient if the seller has a potential interest in the thing sold. But a mere possibility or expectancy of acquiring property, not coupled with any interest, does not constitute a potential interest in it, within the meaning of this rule. The seller must have a present interest in the property, of which the thing sold is the product, growth or increase. Having such interest, the right to the thing sold, when it shall come into existence, is a present vested right, and the sale of it is valid. Thus a man may sell the wool to grow upon his own sheep, but not upon the sheep of another; or the crops to grow upon his own land, but not upon land in which he has no interest. 2 Kent Com. (10th ed.) 468, (641) note *a*. *Jones* v. *Richardson*, 10 Met. 481. *Bellows* v. *Wells*, 36 Verm. 599. *Van Hoozer* v. *Cory*, 34 Barb. 9. *Grantham* v. *Hawley*, Hob. 132.

The same principles have been applied by this court to the assignment of future wages or earnings. In *Mulhall* v. *Quinn*, 1 Gray, 105, an assignment of future wages, there being no contract of service, was held invalid. In *Hartley* v. *Tapley*, 2 Gray, 565, it was held that, if a person is under a contract of service, he may assign his future earnings growing out of such contract. The distinction between the cases is, that in the former the future earnings are a mere possibility, coupled with no interest, while in the latter the possibility of future earnings is coupled with an interest, and the right to them, though contingent and liable to be defeated, is a vested right.

In the case at bar, the sellers, at the time of the sale, had no interest in the thing sold. There was a possibility that they might catch halibut; but it was a mere possibility and expectancy, coupled with no interest. We are of opinion that they had no actual or potential possession of, or interest in, the fish; and that the sale to the plaintiffs was void.

The plaintiffs rely upon *Gardner* v. *Hoeg*, 18 Pick. 168, and *Tripp* v. *Brownell*, 12 Cush. 376. In both of these cases it was held that the lay or share in the profits, which a seaman in a whaling voyage agreed to receive in lieu of wages, was assignable. The assignment in each case was, not of any part of the oil to be made, but of the debt which under the shipping articles

would become due to the seaman from the owners at the end of the voyage. The court treated them as cases of assignments of choses in action. The question upon which the case at bar turns did not arise, and was not considered.

*Judgment for the defendants.*