JAMES C. EMERSON *vs.* EUROPEAN & NORTH AMERICAN RAILWAY COMPANY and trustees.

Penobscot. Decided June 4, 1877.

*Mortgage.*

A mortgage by a railroad company of "all its right, title and interest in and to all and singular its property real and personal, of whatever nature and description, now possessed or to be hereafter acquired, including all its rights, privileges, franchises and easements," cannot be regarded, at law, as including money earned by the road in carrying freight for an express company under a contract entered into by the express company with the railroad company after the mortgage was made.

Nor does it make any difference that the mortgagees took possession of the road and demanded the money of the express company while unpaid.

The mortgagees would be entitled to so much as was earned under the contract after they took possession of the road; and possession having been taken after the services were commenced and before they were completed, for which an instalment would be due from the express company, the payment afterwards due could be apportioned between the railroad corporation and its mortgagees.

ON REPORT.

ASSUMPSIT on an acceptance of the defendant company for $1000, on which a default was entered. The writ was dated October 30, 1875, and served on the trustees, November, 1, 1875.

The question presented was whether the alleged trustees are chargeable as such.

The trustees form a private co-partnership, doing business as expressmen between Boston and St. John, N. B., under the name of the "Eastern Express Co.," and are not incorporated. They disclose that under a contract made with the defendant railway company on January 1, 1873, for 5 years, they were at the time of the service indebted to the company in the sum of $541.66 for the transportation of its express crate over the road from Bangor to St. John, for the month of October, 1875. The sum agreed to be paid for the service was so much per year, to be payable in monthly instalments on the first day of each month for the month previous. The above-named sum was the amount due for the month of October, and was payable on November 1. Payment having been delayed by reason of the attachment, G. K. Jewett, for B. E. Smith, trustee, gave the trustees notice on November 4, 1875, that the fund had been assigned to him, said Smith, as trustee of the railway company, defendants, for the benefit of the creditors of the company.

Said Smith being cited, comes in and makes claim to the fund disclosed, and in support of his claim offers the mortgage deed of the said railway company of its road and property made to Samuel F. Hersey and himself in trust as aforesaid, dated December 5, 1872, said Hersey having since deceased, the mortgage covering the road over the whole distance from Bangor to St. John, and duly recorded. Under the mortgage, at the request of the holders of the bonds secured by it, he entered and took possession of the road on the 27th October, 1875, and at once on the same day gave public notice, by advertisement and posting, of his said entry, and for all persons indebted to pay him. The entry was legally made and for legal cause, coupons having remained unpaid overdue for more than six months after demand. After such entry Smith as

such trustee has continued ever since in possession, and has continued to operate or run the road. And the said express company has continued to have the express crate carried over the road in the same manner and under the same arrangement as before.

The mortgage is made a part of the case. The descriptive part of the mortgaged premises is to be copied, and either party may refer to and make copies of such other parts as they may choose. The disclosure also may be referred to.

Previous to the mortgage to Smith, that part of the road and other property connected therewith lying between Bangor and the state line had been mortgaged to other trustees for the benefit of bond holders, and also that part lying between the state line and St. John, to other trustees for a similar purpose, and in both cases there had been a forfeiture of payments such as authorized the trustees to take possession of the road, but none has as yet ever been taken, and no claim to the fund in question is made by them or either of them. Up to the time of said Smith's entry on the 27th day of October, the road was worked by the consolidated company defendant, and the sum disclosed was proportionately earned as aforesaid while the road was so run by it, no interference by any of the mortgagees having been made except as herein stated.

The case was reported for the decision of the law court, whether the trustees are chargeable, and if so for what sum.

*A. W. Paine,* for the plaintiff.

*C. P. Stetson,* for B. E. Smith, mortgagee and claimant.

The mortgage to Smith was of all the property of the company possessed or hereafter to be acquired, and his claim to the fund disclosed is paramount to plaintiff's attachment. *Woodman* v. *York & Cumberland,* 45 Maine, 207. *Galena & Chicago U. R. R. Co.* v. *Menzies,* 26 Ill. 121. *Pierce* v. *Emery,* 32 N. H. 484. *Morrill* v. *Noyes,* 56 Maine, 458.

The amount disclosed was not due until November 1. Smith, as mortgagee and trustee, took possession Oct. 27, and is entitled to hold all income which became due after he took possession.

*Crosby* v. *Harlow,* 21 Maine, 499. *Gale* v. *Edwards,* 52 Maine, 363, 365. 3 Kent's Com. 471 & note a. 1 Wash. R. Est. (3d Ed.,) 113, 114, 452, 458.

PETERS, J. The consolidated European and North American Railway Company, on December 5, 1872, mortgaged to B. E. Smith (the surviving trustee) and another, for the security of certain bondholders. On January 1, 1873, the railroad company contracted with the Eastern Express Company to carry their freight for five years for a price therefor to be paid by monthly instalments. On October 27, 1875, the mortgagee Smith took possession of the road for condition broken, in the manner provided in the mortgage. On November 1, 1875, the Eastern Express Company were indebted under their contract for a month's service performed by the road. On that day they were summoned in this suit as trustees of the railroad company. On November 4, 1875, the express company were notified to make payment to B. E. Smith. The plaintiff claims to hold the monthly payment by his attachment, and the mortgagee (in trust) claims that it becomes assigned to him, under a clause in the mortgage describing the premises mortgaged to him, as follows : "All its (Deft. Co.'s) right, title and interest in and to all and singular its property real and personal, of whatever nature and description now possessed or to be hereafter acquired, including its railway, equipments and appurtenances between said Bangor and said St. John, all its rights, privileges, franchises and easements, together with its branches, all buildings used in connection with said railway or the business thereof, and all lands and ground on which the same may stand, or connected therewith ; also all locomotives, tenders, cars, rolling stock, machinery, tools, implements, fuel, materials, and all other equipments for the construction, maintaining, operating, repairing and replacing the said railway, or its appurtenances, or any part thereof."

The question presented is, whether this mortgage conveys or assigns to the mortgagee the future earnings of the road (this kind of earnings), as against the attaching creditors of the mortgagers. We think not. This must be regarded as a contest where legal and not equitable rules are to prevail. We have before us an action at law.

In equity, many, if not most, of the courts of the present day decide that, under some circumstances, a man may mortgage what does not at the time exist.   Late opinions of Judge Lowell in the district court and Mr. Justice Clifford in the circuit court of the United States for the district of Massachusetts, in cases in equity, strongly assert the doctrine.   The cases referred to are *Brett* v. *Carter*, 2 Low. 458, and *Barnard* v. *Norwich & Worcester R. R. Co.*, which has not yet appeared in any volume of reports. *Mitchell* v. *Winslow*, 2 Story, 630, and *Pennock* v. *Coe*, 23 Howard, 117, are perhaps the leading cases in this country advocating the same view.   In *Moody* v. *Wright*, 13 Met. 17, decided in 1847, the court of Massachusetts came to an opposite conclusion.   In our own state, the question whether equity would uphold such a mortgage, and, if so, under what conditions, has not been much discussed or ever decided.   See remarks of Justice Davis upon the subject in *Morrill* v. *Noyes*, 56 Maine, 458, on page 472.

But at common law it is not possible for such a rule to prevail. The common law maxim is conclusive upon the point.   *Nemo dat quod non habet.*   The reason that it may be different in equity, is not that a man conveys *in presenti* what does not exist, but that what is in form a conveyance operates in equity by way of present contract merely, to take effect and attach to the things assigned as soon as they come *in esse ;* to be regarded before that time as only an agreement to convey, and after that time as a conveyance.

There are many instances in the decided cases where there may be some appearance of a departure from or a modification of this general principle of the common law, but where the results are produced by other principles not inconsistent with it.   As where property has been added to property by way of accession natural or artificial, the greater taking to itself the lesser thing after the connection becomes inseparable without much injury.   As where a house is built upon mortgaged land ; or a fixture is added to a house ; or rolling stock is put upon a railroad, and becoming a necessary part and parcel thereof.   Domat clearly defines it, thus : " The mortgage will extend to all that shall arise or pro-

ceed from that thing which is mortgaged, or that shall augment it and make a part of it." And it is frequently held that a man may sell property of which he is potentially but not actually possessed. He may make a valid sale of the wine that a vineyard is expected to produce, or the grain a field may grow, in a given time; or the milk a cow may yield during a coming year; or the wool that shall thereafter grow upon sheep; or what may be taken at the next cast of a fisherman's net; or fruits to grow; or young animals not yet in existence; or the good will of a trade, and the like. The thing sold, however, must be specific and identified. It must be, for instance, the products of a particular vineyard or field, or the wool from particular sheep. These must also be owned at the time by the vendor. A person cannot sell the products of a field which he does not own at the time of sale, but which he expects to own. *Farrar* v. *Smith*, 64 Maine, 74, 77.

Tested by these definitions and rules, we do not see how the contract with the express company could be considered as assigned by the mortgage. We do not perceive how it can in any sense be regarded as accessory to the road or its franchise or any of its property. To be sure, the use of the road was necessary to the performance of the contract; but a larger part of the cost of performance was represented by labor and the expenses. As before said, the thing sold or assigned must be specific and identified. In the mortgage this contract is not named. No contracts, with any class of subjects or persons, are named. Even in equity, an assignment of claims not then existing, to be upheld, must be of such claims as both parties expected would exist; as for work to be done and materials to be furnished for a particular party. *Field* v. *Mayor*, &c., *of New York*, 2 Selden, 179. The expectancy of an heir to an estate may be sold, but it must be a particular estate. Story Eq. Jur. § 1040. A seaman may assign his share of the profits of a voyage, but it must relate to a particular voyage of a particular vessel upon which the seaman has engaged his services. A laborer may assign his expected wages, but the expectation must be founded upon some special engagement at labor, or some employment already entered upon by the laborer.

The assignment of a mere expectation of earning money, if there is no contract of any kind on which to found the expectation, is of no effect. There must be some subject for the contract of assignment to attach to. Here, when the mortgage was made, there was no contract and no expected contract with any express company for the carriage of freight. *Farnsworth* v. *Jackson*, 32 Maine, 419. *Brackett* v. *Blake*, 7 Met. 335. *Mulhall* v. *Quinn*, 1 Gray, 105. *Wallace* v. *Walter Heywood Chair Co.*, 16 Gray, 209. *Twiss* v. *Cheever*, 2 Allen, 40. *Low* v. *Pew*, 108 Mass. 347.

It is to be noticed that, if an assignment of a contract like this is covered by the mortgage at all, it is included in it only by the most general terms. The mortgage does not include the assignment of a contract or money earned under a contract, unless by the use of the words " all and singular its property real and personal . . . . to be hereafter acquired." But these general words would seem to refer to 'the kinds of property thereafter enumerated. If money or earnings had been in the minds of the parties, it is likely that they would have been more specifically mentioned. Judge Story says, " language, however general in its form, when used in connection with a particular subject-matter, will be presumed to be used in subordination to that matter." Story's Agency, §§ 21, 62. In *Kendall* v. *Almy*, 1 Sumn. (C. C. R.) 278, where a firm made an assignment of " all the goods, wares, merchandise and personal property of every kind ; and also all notes, books, accounts and debts of every kind due," it was held that the words " personal property of every kind," in the connection, signified visible, tangible property, *ejusdem generis*, as goods, &c., and that an interest in a contract would not pass thereby. *Parish* v. *Wheeler*, 22 N. Y. 494, cited by plaintiff, supports the same view.

The decisions in this state, in a class of cases resembling this, add weight and authority to the opinion we express in this case. In *Abbott* v. *Goodwin*, 20 Maine, 408, it was held that a mortgage of a stock of goods might cover goods purchased after the date and delivery of the mortgage, under the somewhat peculiar circumstances of that case. But the authority of that case was

weakened by the case of *Goodenow* v. *Dunn*, 21 Maine, 86, if not in effect overruled by it. It is a noticeable fact that no member of the court sat in both of those cases. In *Head* v. *Goodwin*, 37 Maine, 181, the doctrine of the last named case was fully affirmed, although neither of the former cases was noticed therein by counsel or court. *Head* v. *Goodwin* was approved in *Pratt* v. *Chase*, 40 Maine, 269, 272, and also by *Morrill* v. *Noyes*, 56 Maine, 458, 466. In *Chapin* v. *Cram*, 40 Maine, 561, it was directly determined, that a mortgage of a stock of goods would not transfer to a mortgagee goods afterwards purchased and put in with the stock by the mortgager, although the mortgage had a clause containing an agreement to that effect. These were all decisions at law.

In *Woodman* v. *York & Cumberland*, 45 Maine, 207, relied on by the claimant in the case at bar, the court held that money on hand belonged to the mortgagees "of all the property of the railroad corporation." But the money there in question was already earned and in the possession of the treasurer of the railroad company when the mortgage was made. The case does not disclose fully what the terms of the mortgage were. But in *Noyes* v. *Rich*, 52 Maine, 115, it was decided that a receiver, appointed under proceedings in equity to enforce a mortgage upon the same railroad, was not entitled to the possession of money already earned and on hand when he took possession of the road.

It is evident, that the fund in question, or that portion of it earned before possession of the road was taken by the mortgagees, cannot be regarded, in a suit at law at least, as any part of the *corpus* or property mortgaged. It is rather the earnings or profits derived from the use of such property by the mortgager in possession. Rents and profits of mortgaged property, accruing while the mortgager is in undisturbed possession, belong to him. *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459, 460. *Gilman* v. *Telegraph Co.*, 91 U. S. 603. See numerous citations in *Cook* v. *Corthell*, 11 R. I. 482.

As the monthly instalment was payable on November 1, 1875, and Smith (the trustee) took possession four days before that time, a

question arises whether the monthly payment can be apportioned or not. The railroad company did nothing towards performing the contract after the mortgagee took possession. The contract was then broken by them on account of their inability to carry it out. What was done afterwards was by the mortgagee, and he should have the benefit of any subsequent part performance. The ordinary rule applies. Having acted in good faith, the railroad company are entitled to recover what their services were worth, not exceeding the contract price, less the damages caused by such failure. *Veazie* v. *Bangor*, 51 Maine, 509. *Powell* v. *Howard*, 109 Mass. 192. There being no suggestion to the contrary, the trustees should be charged for 27-31 of the monthly instalment due for October.

APPLETON, C. J., WALTON, DICKERSON and VIRGIN, JJ., concurred.

BARROWS, J., concurred in the result.