THE T. B. TOWNSEND BRICK AND CONTRACTING COMPANY v. JOHN W. ALLEN *et al.*

No. 639.*   (59 Pac. 683.)

1. CHATTEL MORTGAGES—*Form—Combination with Lease.* A chattel mortgage may under the statute of this state be embodied in a contract of lease.

2. ——— *Filing—Neglect of Register.* The lien created thereby is not invalidated by the failure of the register of deeds to make correct entries thereof, if the instrument itself is filed with and left in the custody of the register.

3. ——— *Validity—Subsequent Purchasers—Clay and Bricks.* A chattel-mortgage lien valid against subsequent purchasers of the mortgagor may be created upon the clay and bricks to be subsequently made therefrom, the premises at the time being leased, and the clay from the premises sold by the mortgagee to the mortgagor, for the purpose of making bricks therefrom, although such clay or material to be so used is not at the time separated from the mass thereof comprising part of the premises and brick plant so leased.

*Ordered certified to supreme court, and there pending.—REP.

Error from Atchison district court ; H. M. JACKSON, judge *pro tem.*   Opinion filed January 4, 1900.   Af-firmed.

*Henry Elliston*, for plaintiff in error.

*Wollman, Solomon & Cooper*, for defendants in error.

The opinion of the court was delivered by

MAHAN, P. J. : Defendants in error were the own-ers of about six acres of land, upon which was a plant for the manufacture of vitrified brick.   On the 15th of March, 1894, they leased the land to John Gaffney, together with the plant and machinery thereof, and authorized him to take clay from the land and manu-facture bricks therefrom for a certain agreed rental, payable monthly.   By this contract Gaffney mort-gaged to them certain machinery of his, the clay granted to him by the lease, and the bricks to be made therefrom.   This instrument was filed with the regis-ter of deeds on the 23d of March, 1894, and remained on file in that office in conformity with the statute re-lating to chattel mortgages.   Subsequently the plain-tiff in error obtained a contract from the city of Atchison to pave one of its streets, and entered in-to an arrangement with Gaffney by which he was to furnish bricks from this plant, delivered by him upon the street to be paved, for which he was to re-ceive five dollars per thousand and one-half of the profits of the contract for paving.   Plaintiff in error was to make certain advances to Gaffney to enable him to make and burn the bricks.   On the 10th of November, 1894, plaintiff in error purchased from Gaffney and paid him full value for the bricks in con-troversy herein with other bricks in the same kiln,

being at the time of the purchase in a green state and then being placed in the kiln preparatory to burning. Prior to the 11th of December, 1894, they took actual possession of the kiln and began removing the same from the premises. On the 14th of December, 1894, Gaffney still being in possession of the plant, the defendants in error notified the plaintiff in error that they claimed a lien upon the bricks and clay then remaining in the kiln and all other bricks in and about the yard by virtue of the instrument embracing the lease and the mortgage above mentioned, and after that notice the plaintiff in error removed from the kiln and placed upon the street they were paving bricks of the value of $250. At that time Gaffney was indebted to the defendants in error in the sum of $250 for rent, which was secured by this mortgage. These facts, and others which we do not consider it necessary to state in this opinion, were agreed to by the parties, and thereon judgment was rendered for the plaintiffs, defendants in error, against the plaintiff in error, defendant below.

The specifications of error are :

(1) That the mortgage was invalid as against the plaintiff in error as a *bona fide* purchaser or creditor ; (2) that the court erred in holding the instrument to be a mortgage or conveyance intended to operate as a mortgage of personal property within the statute, so as to give constructive notice of the lien thereby created by being filed in the register of deeds' office under the provisions of the statute ; (3) that the court erred in holding that an instrument indorsed by the plaintiffs with the word "lease," and further indorsed so as to show that the plaintiffs were lessors, by which means the register of deeds deposited the same in a place where mortgages would not be looked for in the

register of deeds' office by any one looking for leases or mortgages upon the property of Gaffney, was sufficient to give constructive notice of a lien claimed upon Gaffney's property, even if it was in fact a mortgage within the meaning of the statute ; (4) that the mortgage was invalid as to the property claimed under it by the plaintiffs, because at the time it was executed it had no existence, and such an instrument, dealt with as this was by the plaintiffs and the register of deeds, was not sufficient to create a lien as against the defendant without actual notice before acquiring possession under the purchase.

The first and fourth assignments seem to cover the same ground, or rather, in making the fourth assignment, counsel for plaintiff in error attempted to cover the grounds contained in the other three.

It is very clear from the reading of the contract itself that the parties intended it to operate as a mortgage upon the property described therein, the description being sufficient. The terms of the instrument creating the lien are in effect a chattel mortgage. The statute in relation to filing chattel mortgages in order to impart constructive notice was complied with by the plaintiffs. It appears from the agreed statement of facts that the register of deeds entered the same upon the chattel-mortgage record. However, in doing so, he reversed the order of the parties and called the grantor the grantee and the grantee the grantor. It appears further from the agreed statement of facts that he placed it in a pigeonhole designated with the initial letter of the mortgagee instead of the mortgagor. The intention of the statute is clear that the mortgage itself, and not any record made by the register of deeds, is the thing which gives notice to interested parties of the existence of a

lien created thereby. So we say it was immaterial whether the register correctly recorded the mortgage or not, or in what place he filed it. The mortgagees did all that was required of them.

As to the remaining question, whether Gaffney had such title or interest in the property that he could make a valid mortgage, we have arrived at a solution thereof with some hesitancy, but it seems to us that the conclusion reached by the trial court is the correct one. Counsel for plaintiff in error relies mainly upon the decision of the supreme court in the case of *Long v. Hines*, 40 Kan. 216, 220, 16 Pac. 339, 19 Pac. 796. By that decision it has become the settled law of Kansas that crops — the products of the farm other than the natural product thereof — not sown at the time of the execution of the mortgage, have no such existence actually or potentially as will support a mortgage thereof.

It is argued in this case that the bricks for the conversion of which a recovery is sought had no actual or potential existence, and therefore the case comes within the rule laid down in *Long v. Hines*, supra. We cannot agree with counsel in this contention. The clay from which the bricks were to be made, as well as the bricks, were specifically mortgaged by Gaffney to secure the indebtedness which is the basis of this suit. The crop of corn in controversy in the case of *Long v. Hines* was a mere possibility coupled with no present interest. In this case, the bricks, the subject of the controversy, are the immediate product of the clay which Gaffney was licensed to take and remove from the ground and use in the operation of the plant, so that he had a present interest in the property pledged. The production of the bricks was a possibility, coupled with a present interest in the material

from which they were to be manufactured.   It is said that the clay was not separated from the land, and, therefore, had no separate existence as personal property and could not be pledged.   The lease, in respect to the removal of the clay and the use thereof in the manufacture of bricks, created no interest in the land, but, on the contrary, the parties by their express contract both agreed to treat and did treat the clay to be so removed as personal property, the property of Gaffney, and as soon as it was removed it actually became personal property and the property of Gaffney, subject to the lien reserved by the contract giving to him these rights.   Neither the parties nor their privies can now contend to the contrary.   It is immaterial that after the bricks were burned they never could become clay again in the form it existed theretofore.   Shoes manufactured from leather can never become leather again in the correct meaning of the expression.   (*Thrall v. Hill,* 110 Mass. 328; *Putnam v. Cushing,* 10 Gray [Mass.] 334; *Low v. Pew et al.,* 108 Mass. 347; *Denham v. Sankey,* 38 Iowa, 269; *Fejavery v. Broesch,* 52 Iowa, 88, 2 N. W. 963; *Heald v. Insurance Co.,* 111 Mass. 38; *Lewis v. Lyman,* 22 Pick. 437; Benj. Sales, § 78; *Claflin v. Carpenter,* 4 Metc. [Mass.] 580.)

It follows that the judgment of the district court was correct, and it is therefore affirmed.