## SWIFT-McNUTT COMPANY OF RHODE ISLAND *vs.* JACOB COHEN.

### Suffolk.    March 12, 1928.— May 29, 1928.

#### Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Assignment*, Equitable.

An agreement, whereby one purchased goods from a corporation for resale and agreed that the check given him on resale should be made payable to his order and the order of the treasurer of the corporation, and should be delivered to the treasurer, who would collect the proceeds, pay therefrom the purchase price due the corporation and pay the balance to the purchaser, was merely an executory agreement and did not in itself constitute an equitable assignment of the amount to be received; and, although a creditor of the purchaser, to whom the check, payable to the purchaser, was delivered by the purchaser without the knowledge of the corporation, and who collected the proceeds and applied them to an indebtedness of the purchaser to him, had notice of the agreement, the corporation could not recover the amount of the check from the creditor in an action for money had and received.

CONTRACT. Writ in the Municipal Court of the City of Boston dated October 25, 1926.

On removal to the Superior Court, the action was tried before *Greenhalge*, J. Material evidence is set forth in the opinion. After the jury had answered certain special questions submitted to them, the judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*L. J. Dunn*, for the plaintiff.

*J. C. Johnston*, for the defendant.

BRALEY, J. In this action of contract for money had and received to the plaintiff's use, the jury would have been

warranted in finding the following facts: About September 10, 1926, one Carroll, a partner in the McCurdy Wrecking Company of Boston, interviewed one A. Gerard Dunn, treasurer of the plaintiff corporation, relative to purchasing certain lumber. A few days later, accompanied by the defendant Cohen and an attorney, Carroll again called on Dunn with whom the defendant had a conversation respecting his financing the proposed purchase of lumber by Carroll. On September 17, 1926, Carroll had another interview with Dunn, at which he exhibited to Dunn certain orders received by him from the Bethlehem Ship Building Corporation for lumber of the grade he had been trying to purchase from the plaintiff. This interview resulted in an agreement of sale by the plaintiff to Carroll of the lumber required to fill the orders provided the check of the Bethlehem Ship Building Corporation in payment therefor should be made to "McCurdy Wrecking Company, A. Gerard Dunn, Treasurer," and that, upon its receipt by Carroll, he should turn the check over to Dunn who was to collect the same and apply the funds so received in payment of the indebtedness of the McCurdy Wrecking Company to the plaintiff, the balance over that amount to be paid to Carroll. Pursuant to this agreement, the plaintiff's treasurer and Carroll executed in duplicate the following instrument: "Exhibit 1. Providence, R. I., 9–17–26. McCurdy Wrecking Co. 1200 Mass. Ave., Boston In Account with SWIFT-McNUTT Co., of R. I. Building Wrecking, 45 Anthony Avenue. We agree to have check made out McCURDY WRECKING Co. A. Gerard Dunn, Treas. Will bring check on receipt of same, and we to receive difference as per agreement. McCURDY WRECKING Co. James P. Carroll." Thereupon the plaintiff delivered lumber in accordance with the orders received by Carroll to the McCurdy Wrecking Company which it, in turn, shipped to the Bethlehem Ship Building Corporation, at an agreed price to the plaintiff of $1,173.30. A few days later, Carroll showed his copy of Exhibit I, to the defendant, to whom — at this time and for some months previous — Carroll and his company were indebted for money lent. The defendant, after consultation with his attorney and Carroll,

charged the latter and his partner "with having retained sums of money realized from sales of materials title to which the defendant Cohen had taken from the said McCurdy Wrecking Company as security for his indebtedness," whereupon Carroll agreed to pay Cohen out of the check he was expecting from the Bethlehem Ship Building Corporation which, when it was received, was made payable to the McCurdy Wrecking Company for $1,703.64. Unknown to the plaintiff, Carroll turned over the check so received to Cohen who deposited and collected it in due course, and, at the time of the trial, still held a balance of $155.15 in excess of the amount owed by the McCurdy Company to him. The plaintiff, upon learning that the check had been delivered to Cohen, demanded that it be turned over to it, but the defendant refused.

The jury answered in the affirmative two questions submitted by the court: "1. Was the check of the Bethlehem Ship Building Corporation delivered to the defendant upon account of an indebtedness of the McCurdy Wrecking Company to the defendant?" and "2. Prior to the delivery of such check to the defendant did the defendant have notice of the agreement set forth in Exhibit 1 of the McCurdy Wrecking Company to deliver it to the plaintiff?" A third question, not material to the issue, was answered in the negative. Thereupon, on motion of the defendant and subject to the plaintiff's exception, the trial judge directed a verdict for the defendant with the stipulation that if the verdict was wrongly ordered judgment should be entered for the plaintiff in the sum named in the declaration with interest from the date of the writ.

The question for determination is, whether or not the agreement embodied in Exhibit 1 constitutes an equitable assignment.

The agreement between the plaintiff's treasurer and Carroll was executory in that the promisor, before the agreement could become effective, had to do two things: Request the Bethlehem Ship Building Corporation to make a check payable to the "McCurdy Wrecking Company, A. Gerard Dunn, Treasurer," and, upon its receipt, deliver the same to

the plaintiff.   Neither of these things was done.   "There was no effective appropriation, actual or constructive, of the subject-matter in favor of the claimant."   *White* v. *Coleman,* 127 Mass. 34, 36.   The chose in action was not in existence, the goods for which payment was expected not having been sold or delivered.   There was no delivery to the plaintiff by the assignor of any note, certificate or other document which could constitute a chose in action with power in the assignee to exercise full dominion over it and a renunciation of any power over it on the part of the assignor.   *Palmer* v. *Merrill,* 6 Cush. 282, 286.   *Webb* v. *Walker,* 7 Cush. 46.   *Stearns* v. *Quincy Mutual Fire Ins. Co.* 124 Mass. 61, 63.   *Elmore* v. *Symonds,* 183 Mass. 321, 325, 326.

Manifestly, upon the evidence, the agreement was at most a mere promise to pay from a particular fund to be acquired in the future.   The assignor never parted with control over the fund, nor did the assignee ever acquire any dominion over it.   *Low* v. *Pew,* 108 Mass. 347, 350.

*Exceptions overruled.*