## FIRST NAT. BANK OF PORTLAND v. HALL.
### No. 1389.

District Court, D. Maine, S. D.

Feb. 8, 1937.

Arthur D. Welch and J. F. A. Merrill, both of Portland, Me., for plaintiff.

Woodman, Skelton, Thompson & Chapman, of Portland, Me. (N. W. Thompson and Philip Willard, both of Portland, Me., of counsel), for defendant.

PETERS, District Judge.

This is a suit against the indorser of a promissory note for $4,547.36, dated August 24, 1932, given by the E. T. Burrowes Company to the plaintiff bank, on which various payments have been made, and on which the plaintiff claims there is due with interest some $400. By stipulation a jury was waived and the case heard by the court. The defense is payment.

The facts upon which the defendant relies to sustain the burden of proof resting upon him to show payment are substantially as follows: The Burrowes Company, of which the defendant Hall was a director, was in financial difficulties in 1931, and in the latter part of that year its president, Mr. Cleaves, together with Mr. Hall, consulted the president of the plaintiff bank, to which the Burrowes Company then owed considerable sums of money, and asked for another loan. It was granted on condition that Hall and Cleaves would indorse the note, and they agreed to do so if they could be secured for their liability. An arrangement was suggested by the president of the bank, and adopted by all parties, whereby about $7,500 worth of merchandise, consisting of pool tables and similar articles, was delivered by the Burrowes Company to Hall and Cleaves and placed by them in a warehouse known as the Galt Block as security for their indorsements. They had complete control over the merchandise and the transaction was a valid pledge.

The first loan made under this arrangement was $7,500, represented by a note dated November 9, 1931, indorsed by Hall and Cleaves, running to the plaintiff bank, the note in suit being a renewal of a part of that note.

In order to realize on the goods pledged to them a routine was established whereby, from time to time, as Burrowes Company received orders covering such goods, the specific articles to be sold were taken from the storehouse on written order of Hall and Cleaves and delivered to the Burrowes Company for the purpose of shipment to the purchaser, the order and the account created thereby to stand in place of the goods. The bank, as well as Hall and Cleaves, were furnished lists of the accounts as goods were thus taken and shipped, and it was understood that the proceeds for the goods sold should be turned over to the bank, from time to time, as received, and indorsed on the Hall and Cleaves note. The note in suit shows thirty-four of such payments and indorsements.

Later on, when the affairs of the company failed to improve, customers were notified of the assignments of their accounts, and directed to make payments to Hall and Cleaves or to the bank.

One of the customers was the M. & H. Sporting Goods Company of Philadelphia, which company gave to the salesman of the Burrowes Company, on August 30, 1932, an order for various pool tables aggregating $1,542.06. This order was received by the Burrowes Company on September 1, 1932, and entered on their records the same date. In order to fill this order, the Burrowes Company had to have from Hall and Cleaves sixty pieces of what is called No. 134, special pool tables, 60 pieces of No. 137, and twenty-four pieces of No. 138. The aggregate retail price of these articles, as given to the Sporting Goods Company, was $540.96.

The articles of merchandise above were obtained from the warehouse upon written order of Hall and Cleaves, shipped by the Burrowes Company to the Sporting Goods Company and billed that company on October 25, 1932, with directions to make payment to Hall and Cleaves.

It seems that at the time Hall and Cleaves were advancing their credit on the strength of goods pledged to them a certain corporation called Cumberland Securities, Inc., of which Mr. Cleaves was also president, had been organized for a similar purpose; that is, of borrowing money of the plaintiff bank and giving as security assignments of accounts due the Burrowes Company, which Cumberland Securities had received from Burrowes, and many payments had been received by the bank from accounts assigned by Burrowes to Cumberland Securities and by it reassigned to the bank, and corresponding indorsements had been made on the notes of Cumberland Securities.

When the check for $540.96 from the Sporting Goods Company, which paid for the items shipped from the Hall and Cleaves stock, came in, it was sent down to the bank, and indorsed, not on the Hall-Cleaves note, but on notes of the Cumberland Securities. If the indorsement had been on the Hall-Cleaves note (as the defendant claims it should have been), it would have more than paid that note.

Without controverting these facts, which are amply supported by the evidence, the plaintiff claims that the $540.96 was properly indorsed on the Cumberland Securities paper by reason of the following facts, which also were substantially uncontroverted: The Cumberland Securities, on July 25, 1932, in accordance with its routine of doing such business with the bank and with Burrowes Company, took an assignment from the Burrowes Company of what purported to be accounts receivable aggregating $2,690.54, against various persons named, including M. & H. Sporting Goods Company of Philadelphia, in the sum of $1,534.94. The assignment contains a list of the accounts and states: "This is to certify that the persons named below are indebted to the undersigned in the sums set opposite their respective names for goods shipped and delivered and to be shipped and delivered." All the interest of the Burrowes Company is assigned to the Cumberland Securities and on the same instrument Cumberland Securities assigned to the plaintiff bank. Mr. Hall was not a party to this arrangement, and it does not appear that he had any knowledge of it.

The above item of $1,534.94 was the amount of an itemized order sent in to the Burrowes Company from the field by one of its salesmen, received July 23, 1932, and was for different styles of pool tables, some of which, as a matter of fact, were in the Galt Block in the possession of Hall and Cleaves as security for their indorsements, and some were in the establishment of the Burrowes Company unpledged, so far as appears. This order, as such, was never filled; it was superseded by an order of August 30, 1932, for $1,542.06, which included many of the same kind of pool tables as were in the first order, and some not in that order.

The first order was given the number P.849, and is marked "cancelled," and was not filled. The second order, which was filled, is marked P.949. These numbers were put on at the factory office. In the list of accounts assigned to the Cumberland Securities on July 25th, and by it assigned to the bank, the number P.849 appears on the item of the Sporting Goods Company order for $1,534.94..

In spite of the present attitude of the receiver of the plaintiff bank that the sum of $540.96 received by the bank was properly indorsed on the Cumberland Securities note and not on the Hall-Cleaves note, there is some evidence that officers of the bank regarded that as an error. It seems, also, that there was necessarily some confusion in the accounts of the different payments, and a firm of auditors was sent by the bank to the Burrowes Company in November of 1932 to make an audit. In the report made to the bank the expert accountants compiled information relating to the various transactions. On one page of their report there is a list of "Accounts Receivable Substituted for Accounts Pledged to Cumberland Investors, Cancelled or Released." In that list is an item of "M. & H. Sporting Goods Co. Phila., $489.06.," and in another list, headed "Merchandise Shipped from Galt Block, Proceeds to Apply on Cleaves-Hall Note at First National Bank," is an item "M. & H. Sporting Goods Co., Phila., $540.96." This last amount, of course, is the exact amount of the price of the pool tables taken from the Galt Block by consent of Hall and Cleaves to be shipped to the Sporting Goods Company, the money to be paid to Hall and Cleaves or for their benefit on the note at the bank, and the other item of $489.06 is the exact amount of a sale of other items which were sold to the Sporting Goods Company from stock not pledged to Hall and Cleaves, separately itemized and billed at the same time. So that it is evident that the bank knew, or should have known, from the report of their auditors that there had been shipped on October 25, 1932, to M. & H. Sporting Goods Company, Philadelphia, merchandise that had been taken from the Galt Block to the amount of $540.96, and the bank knew, because its former president had suggested the arrangement which was carried out, that all items in the Galt Block belonged as a pledge to Hall and Cleaves, and that the proceeds from these goods so stored, when received by the bank, were to be applied on the notes indorsed by Cleaves and Hall.

At the time of the report of the auditors the proceeds from the sales to the Sporting Goods Company had not been received. When received, later on, they were applied wholly to notes in which the Cumberland Securities was interested, and not to the Hall-Cleaves note.

The question to be decided is whether the assignment of July 25, 1932, from the Burrowes Company to Cumberland Securities, and the reassignment to the bank of the accounts containing the item "M. & H. Sporting Goods Co. Phila., $1,534.94," justified the bank in applying to the Cumberland Securities note, instead of the Hall-Cleaves note, the $540.96 received from the Sporting Goods Company, in view of the other facts mentioned.

Hall and Cleaves had a valid pledge on the goods which produced the $540.96 antedating any title the bank might have under the assignment of July 25, 1932, and their lien under the pledge continued unless they have waived it, or are estopped from asserting it.

■ It is argued in behalf of the plaintiff that the defendant lost the benefit of the pledge by surrendering possession to the pledgor, but that was not a complete or unconditional surrender. Under the arrangement made the change of possession was temporary and for a special, limited purpose, viz., for shipment to a purchaser who was directed to pay the price directly to the pledgee. In that case the pledgor merely acted as the agent of the pledgee for a special purpose, and I cannot see how the lien of the pledgee was lost.

In the case of Casey v. Cavaroc, 96 U. S. 467, at page 480, 24 L.Ed. 779, cited by the plaintiff, it is said: "All the cases cited, however, show that a bailment to the pledgor for a mere temporary purpose for the use of the pledgee, or for the repair and conservation of the pledge, will not destroy the latter's possession; at the same time, they imply that a redelivery to the pledgor, except for the special and temporary purposes indicated, divests the possession of the pledgee, and destroys the pledge."

■ The bank, moreover, does not stand in the position of an innocent third party. It was a party to an agreement whereby this money was to take the place of goods, pledged for its benefit, and was bound to apply the money in accordance with that agreement. If any one is estopped here, it is the bank.

■ Nor is it a case of application of payments. In certain cases, of course, in the absence of application by a debtor, the creditor can make the application; but not here, where the creditor not only had knowledge, or from its records should have had knowledge, that the money was paid for the purpose of being indorsed on the Hall-Cleaves note, but knew that it should be so indorsed, and probably at the time intended that it should be so indorsed, but by an error of some officer or clerk indorsed the sum on the wrong note.

■ It is not necessary to consider the matter of the validity of the assignment to the bank on which it relies. It was of an account that at the time had no existence and was a mere expectation of earning money which has been held to be no foundation for an assignment. Farnsworth v. Jackson, 32 Me. 419; Emerson v. European, etc., Railway Co., 67 Me. 387, 24 Am.Rep. 39. Whether or not the assignment would ordinarily have any validity, the plaintiff can claim nothing under it, so far as the check for $540.96 is concerned, because that was derived from the sale of goods on which a prior lien existed for its benefit and which it was under obligation to apply to the note indorsed by the defendant.

If that application had been made, the note sued on would be more than paid, and consequently judgment must be for the defendant, with costs.