JOHN FARRAR *vs.* AUGUSTUS J. SMITH.

*Parol evidence.　Delivery—what is necessary to constitute.*

Where a grantor has conveyed a farm, reserving in the deed the use of the
buildings thereon for a period of time afterwards, the grantee is not estop-
ped by the deed to show that there was an oral agreement, at the time, that
he was to have what manure should be made by the grantor's cattle on the
place in the meantime, for the use of the premises.

The grantor could legally sell the manure to be made by his cattle during that
time; but, to complete a sale as against a second purchaser, a delivery was
necessary.

ON EXCEPTIONS.

TRESPASS *de bonis asportatis,* for taking and carrying away a
quantity of manure.　Plea, the general issue with brief statement
of title in the defendant.　January 9, 1869, Elijah Smith con-
veyed to Mr. Farrar by deed of warranty the homestead farm in
Corinth upon which said Elijah was then living, the use of the build-
ings upon which he reserved to himself in said deed till the twen-
ty-fifth day of March, 1869, and remained in occupation of them
until that day arrived.　Upon the twelfth day of March, 1869,
Elijah Smith sold the manure in dispute, which was then in the
barn upon said farm, to the defendant, who hauled it off the next
day, for which act this action was commenced March 15, 1869.
Farrar mortgaged back the land to secure part of the purchase
money, and his notes and mortgage remained unpaid in Elijah
Smith's hands at the time of the trial.　These conveyances were

executed at the office of H. P. Haynes, several miles distant from the farm, and the plaintiff was permitted to testify, against the seasonable objection of the defendant, that it was then and there agreed between the parties that, in consideration of said Elijah's having the use of the buildings on the place till March 25, 1869, the plaintiff was to have all the manure made by said Elijah's cattle upon the farm during that time, and other witnesses were allowed to state facts tending to prove the same thing. It was admitted that the defendant knew nothing of this arrangement when he bought and removed the manure.

Elijah Smith, called by the defence, denied that such agreement was ever made, and testified that at the date of the deed he had fifty tons of hay in the barns on this place, half of which was not cut upon the farm but cut elsewhere and hauled there; that he traded in cattle; bought, fatted and sold them; that after Jan. 9, 1869, he bought oxen and stall-fed them with grain bought for the purpose after that date; that immediately after that day he cleared out the wide space behind the "tie-up" in his barn, laid a new flooring, and constructed a large box into which he threw all manure thereafterwards made, considering it his property, having thrown that previously made into the yard and left it there when he quit the premises.

March 12, 1869, he sold this manure in the box to the defendant, who then paid him, and hauled it away the next day. Mr. Farrar was not at the farm from some day before his purchase till after the removal of the manure. Mr. Haynes, the scrivener, heard nothing said about manure while the parties were at his office, the plaintiff admitting that no other conversation was ever had on the subject, except at that time and place. To the admission of parol evidence to vary the effect of the deeds the defendant objected, and further contended that there was no delivery of the manure which was not in existence January 9, 1869, to vest title to it as against him, an innocent purchaser for value without notice; but the presiding justice ruled *pro forma* that the delivery was sufficient, that the testimony was admissible, and if believed entitled the plaintiff to a verdict, which he obtained, and the defendant excepted.

*Brown & Simpson* for the defendant.

*Lewis Barker* for the plaintiff.

PETERS, J. In January, 1869, Elijah Smith conveyed a farm to the plaintiff by a deed containing these words : "Reserving, however, possession of the buildings for my own use till the twenty-fifth day of March, 1869." The verdict in the case establishes the fact that, at the time the deed was given, it was orally agreed by the parties to the deed that, as a compensation for the use of the buildings, as reserved to the grantor, the grantee should have all the manure made on the farm by the grantor's cattle during that time. The manure created during this period was collected into heaps in the barns where it was made, and then sold and delivered to the defendant by the grantor, and by the defendant paid for and removed from the premises before the twenty-fifth day of March, 1869, without any notice of a prior agreement or sale. The plaintiff was not upon the farm at the time the deed was given to him, nor at any time afterwards before the manure was removed. No other delivery of the manure was made to the plaintiff than is inferable from the situation of the parties and the facts thus stated. Several questions are raised by the defendant's exceptions to the rulings, which were made *pro forma.*

I. It is contended that oral evidence to prove the bargain between the parties to the deed, about the manure, was improperly admitted, because it was contradictory to the terms of the deed. But we think that the admission of this evidence amounts only to allowing the plaintiff to show that he was to give less for the land than the amount of the consideration expressed in the deed. That is, that he was to have the manure, in addition to the farm, for the sum paid by him. This affects the consideration only. In this view the evidence was admissible. In *Goodspeed* v. *Fuller,* 46 Maine, 148, where the decisions bearing on this subject are extensively collected, the court say : "The entire weight of authority tends to show that the acknowledgment of payment in a deed is open to unlimited explanation, in every direction."

II. The next objection is, that manure not in existence at the time of an attempted sale cannot legally be sold. According to most of the authorities, a thing may be sold which has only a potential existence. Among the illustrations given by legal writers, it is said that a valid sale may be made of the wine that a vineyard is expected to produce, or the grain a field may grow in a given time, or the milk a cow may yield during a coming year, or the wool that shall thereafter grow upon sheep, or what may be taken as the next cast of a fisherman's net, or fruits to grow, or young animals not yet in existence, or the good will of a trade, and the like. The thing sold, however, must be specific and identified. It must be, for instance, the products of a particular vineyard or field, or the wool from particular sheep. These must also be owned at the time by the vendor. A person cannot sell the products of a field which he does not own at the time of sale. Nor can he sell the wool to grow upon sheep which he does not own at the time of sale, but which he expects or agrees to buy thereafter. *Pratt* v. *Chase*, 40 Maine, 272 ; *Morrill* v. *Noyes*, 56 Maine, 458. We think the ruling upon this point was correct. It may well be supposed that the jury understood the sale to be applicable to such products of the stable as should be made by the particular animals then owned and possessed by the vendor.

III. Upon the remaining point, we think the ruling was not correct. The presiding justice substantially instructed the jury that, upon the facts found, there was a sufficient delivery to overcome the rights of the defendant as a *bona fide* purchaser. Had the manure remained upon the premises at the time the grantor left them, that act would have amounted to a delivery. *Nichols* v. *Patten*, 18 Maine, 231. But the manure was all removed before the seller's tenancy had terminated, and before the grantee had any possession of the buildings where it was. Up to the twenty-fifth day of March, 1869, the plaintiff had no more right to control or occupy the buildings than any stranger had. The manure could not pass as a part of the realty. It was

not upon the land when the deed was given, nor was it then in existence. The ordinary relation of landlord and tenant did not exist between the parties; nor was the manure made in the course of husbandry on the farm, if such a relation did exist. We do not see that there is any evidence of delivery whatever. Although the rule which requires a delivery to a *bona fide* purchaser, who has paid the price for personal property, as against a second purchaser, has been very liberally construed in many of the later decisions in this country; still, the rule has not been abrogated. Some evidence of delivery is required, though it may be slight. But here there is none. *Fuller* v. *Ludwig,* 17 Maine, 162; *Garland* v. *Hilborn,* 23 Maine, 442; *McKee* v. *Garcelon,* 60 Maine, 165; *Ingalls* v. *Herrick,* 108 Mass., 351.

*Exceptions sustained.*

APPLETON, C. J., CUTTING, WALTON, BARROWS and DANFORTH, JJ., concurred.