## JONES v. JONES ET AL.

1. **Guardian and Ward:** NATURAL GUARDIAN. The mother of a minor child cannot make an agreement respecting the property of the latter which shall be binding, simply upon the ground of her relationship and because she is the child's natural guardian.

2. **Contract:** WRITING SIGNED BY HEIR: EVIDENCE. An instrument in writing recited that for and in consideration of the conveyance of certain property therein specified, the obligor agreed to release all interest in his father's estate, should the latter die without making a will, and that he would not claim anything more from the estate; the instrument was executed before the death of the father in pursuance of an agreement between him and the son, *held*, that it constituted not a release simply but a contract, and that parol evidence was not therefore admissible to vary or contradict it. BECK, J., *dissenting*.

3. ——: ——: VALIDITY OF. It was competent for the heir to make such a contract, and when made it was valid and binding upon him.

4. ——: MINOR: DISAFFIRMANCE. A minor is bound by his contract unless he disaffirms it within a reasonable time after he attains his majority. Where a minor entered into a contract with his father respecting his share in the estate, which he failed to disaffirm within six months after he became of age, he was *held* not to be entitled to disaffirm it after that length of time had elapsed. ADAMS, J., *dissenting*.

*Appeal from Polk Circuit Court.*

THURSDAY, SEPTEMBER 20.

THE plaintiff is administratrix of the estate of her deceased husband, John W. Jones, who died on the 2d day of December, 1873, intestate, and the plaintiff filed the petition in this case asking the advice and direction of the court as to the distribution of the property left by the deceased. The petition states that the deceased left surviving him the following children: Rosaltha J. Rickey, Samantha A. Billsland, Edward H. Jones, Leonidas H. Jones and Grace Jones, the latter only being a minor; all of whom are made defendants.

The petitioner further states that in April, 1873, in consideration of a certain sum of money paid them, the defendants, Mrs. Billsland, E. H. and L. H. Jones, executed a written re-

lease of all their rights and interests in the estate of the said John W. Jones.

That in January, 1874, the plaintiff, for herself and as pretended guardian of Grace Jones, and the other defendants executed a certain writing, whereby it was agreed the several amounts so paid Mrs. Billsland and E. H. and L. H. Jones, should be treated as advancements, and that the estate subject thereto should be equally divided among all of said children, subject, however, to the dower or distributive share of the plaintiff as widow of said deceased, which was in no manner changed or affected by said writing; that at the time of the execution thereof the plaintiff was not the guardian of Grace Jones, and that the same was signed by plaintiff at a time when she was in great distress and through the procurement and representations of the other parties, and she asks the advice of the court as to whether said Grace is bound thereby; that since the signing of said agreement one Johnson T. Wright has been appointed guardian of the said Grace, and he as such is made a defendant.

The defendants, except the guardian of Grace, united in an answer and cross-petition, the material portions of which are as follows:

The execution of the several releases is admitted, but defendants deny they severally received the amount of property therein stated, and aver that the same are inequitable and void because of their having been executed under the following circumstances:

" Prior to the execution of said releases, the defendant, Samantha Billsland, had inter-married with her present husband, Isaac Billsland, and, at the date of such release, had born unto them five children, all then living; that said Billsland had been unsuccessful in business, and had accumulated no property, and said defendant, Samantha Billsland, had frequently called upon decedent for assistance and aid in the support of her family, which was still increasing; that defendant, L. H. Jones, was only about seventeen years of age, and had been unaccustomed to business or business habits of life, and was wholly ignorant of the art of saving money or of keeping or using.

the same discreetly or with profit, all of which was well known to decedent; that prior to the date of said alleged release decedent had entered into co-partnership with defendant, E. H. Jones, in mercantile business at Lacona, Iowa, under the firm name and style of Jones & Son, said decedent putting into said business about $2,600, and E. H. Jones $500, and the said L. H. Jones had been engaged as clerk for said firm in the said business aforesaid; that decedent desiring to settle his son, L. H. Jones, in business, and to secure to him the benefit of the counsel and experience of E. H. Jones, gave him and the said E. H. Jones his interest in the stock on hand in said store of Jones & Son, in such proportion as to make the said L. H. Jones and E. H. Jones equal partners in the property as expressed in the contract hereinafter set forth, and agreeing to convey to them a certain forty acres of land in Lucas county, Iowa, and a tract of eighty acres in the state of Kansas, and thereupon showed to E. H. Jones the alleged release which he desired him to sign, and which said E. H. Jones absolutely refused to do, refusing to receive any part of the same, or interest in the said goods, or such lands, under such arrangement, or for such purpose; that decedent then assured said E. H. Jones that his sole object was to induce L. H. Jones to sign a like paper, to the end that he might be a careful partner of E. H. Jones, and take good care of the property given him, and that if he, the said E. H. Jones, refused to sign such paper, L. H. Jones would also refuse. Decedent then said that he desired E. H. Jones to keep the objects aforesaid secret from L. H. Jones, and assist him in inducing L. H. Jones to use care in business, and in preserving his property, and that upon such representations, and for such purposes, and for no other purpose did said E. H. Jones ever sign said alleged release; that in signing the same the said E. H. Jones acted under the instructions and at the solicitation of decedent, and at decedent's solicitation induced L. H. Jones to sign the alleged release signed by him for the purposes aforesaid and for no other purpose; that L. H. Jones declined to sign such release until decedent represented to him that E. H. Jones had signed one just like the one presented to him to sign. And then in keep-

ing with such purpose decedent said to L. H. Jones, as soon as he signed such release: 'Young man, you must now either fish or cut bait.'

"And defendants say that said decedent further represented to said E. H. Jones, in order to induce him to sign said alleged release, that he proposed to secure the signature of Samantha Billsland to one of like character to induce her and her husband to believe that they must look out and provide for themselves, in order to induce greater diligence and care in business, and for no other purpose; that said decedent afterward went to the house of Samantha Billsland, and in the absence of her husband delivered to her a deed of eighty acres of wild land in Dallas county, Iowa, worth only about $600, and after assuring her that both E. H. Jones and L. H. Jones had signed like receipts and papers, and knew they were all right, decedent induced her to sign the one set out as Exhibit '1' to plaintiff's petition; and they say that decedent well knew that E. H. Jones had not, in truth and fact, signed any such receipts for the purposes alleged or in release of his interest in decedent's estate, and that such alleged release was of no validity against E. H. Jones and L. H. Jones."

The said defendants ask that the releases be declared void, and that the estate be distributed in accordance with the agreement referred to in the petition.

The guardian of Grace Jones answered the petition and cross-petition, and insisted that the releases were legal, valid and binding, and that the subsequent agreement was of no validity as against Grace Jones; and the plaintiff, in substance, denied the allegations in the cross-petition.

By agreement of parties the cause was transferred to the regular chancery docket and tried as an equitable proceeding, and both parties insist it should be tried as such in this court. The Circuit Court found that the releases were legal and binding, and that the subsequent agreement was of no validity as against Grace Jones, and ordered a distribution of the estate, as follows: To the plaintiff the portion she by law was entitled to, and that the residue of the estate be divided

equally between Mrs. Rickey and Grace Jones. The defendants appeal.

*Phillips, Goode & Phillips*, for appellants.

*Nourse & Kauffman*, for appellees.

SEEVERS, J.—I. The agreement made in January, 1874, in no manner affected the plaintiff's interest as widow, but she agreed to "answer for Grace Jones, as her guardian, she being her mother, and the law making her her natural guardian." At the time the agreement was executed no guardian had been appointed for Grace Jones. It is quite clear, we think, that Grace Jones is not bound by said agreement; indeed, we do not understand counsel to so insist in their argument. Mrs. Rickey never signed said agreement, but E. H. and L. H. Jones agreed to "answer for the faithful performance of the contract on her part." As we understand, Mrs. Rickey is perfectly willing to abide thereby if it is legal and binding on all, but if not then she repudiates it; and it was agreed, in open court, that she should not be held bound unless it was so held as to all. As we find it is not binding on Grace Jones, it may be regarded as void and without effect as against any of the parties to this action.

*1. GUARDIAN and ward: natural guardian.*

II. The writings designated by the parties as releases are precisely alike, except that the consideration is stated differently, but the legal effect of all is the same, and the one executed by E. H. Jones is as follows:

*2. CONTRACT: writing signed by heir: evidence.*

"I, E. H. Jones, for and in consideration of the undivided half of a store in Lacona, Warren county, Iowa, and the undivided half of a certain tract of land of one hundred and twenty acres, amounting in all to one thousand six hundred and seventy-five dollars, given to me by my father, J. W. Jones, of the county of Warren, and State of Iowa, aforesaid, for and in consideration of the above, I do agree and bind myself by these presents to release all my right, title and interest to his estate, should he die without making a will, that

I will in no case claim anything more from said estate, either in law, equity, or otherwise.

"Signed in presence of......, this....day of April, 1873.
"E. H JONES."

This writing was in fact executed on the 21st day of April.

The defendants sought to prove, by parol, the matters set up in the answer and cross-petition, not for the purpose of "changing the terms of the releases, but to show they "were obtained unfairly by the decedent, and by undue parental influence, and for a purpose entirely different from the use now sought to be made of them, and that to now permit appellees to use these releases for the purpose sought would operate as a fraud upon appellee, and give her rights which she is not in equity entitled to." The court, however, being of opinion the proposed evidence would tend to contradict or vary the terms and legal effect of the writings, rejected the proposed evidence.

We do not understand the answer and cross petition to charge that the defendants' signatures to the releases were procured through any fraudulent representations, or that the contents or legal effect of the writings were not understood. Indeed, it is difficult to see how there could be any fraud in the transaction, so far as the defendants were concerned. If full scope and effect is given to the writings, the defendants parted with nothing to which they had any legal right. They obtained something for nothing, and how this can be termed a fraud as to them we are at a loss to conceive.

Previous to the death of John W. Jones, these defendants had no right to any portion of his estate which the law recognized, and consequently there could be no fraud under the circumstances stated in procuring them to execute the writings. *Stewart v. Stewart*, 5 Conn., 216.

These writings are designated by counsel as releases. Strictly speaking, they are neither releases or receipts, but something more. They can be well said to embrace, 1st: A receipt for the money or property; 2d: A release of all right, title and interest in the decedent's estate, should he die with-

out making a will; and, 3d: An agreement or covenant ·not to claim anything more from the estate, either in law or equity. This, to all intents and purposes, is a contract, and it cannot be varied or controlled by parol testimony. Its meaning cannot be changed by what occurred at the time it was executed. These instruments have more of the elements of a contract than that in *Stapleton v. King*, 33 Iowa, 28.

Counsel ingeniously state their proposition, but it amounts to this, and nothing more: That the instruments were not intended to affect the interest of the signers in the estate of their father, should he die without a will, except that the amounts severally received should be treated as advancements. But this directly contradicts the plain and unambiguous language used. Why should what was received be treated as advancements? No such language can be found. Possibly the law would so imply, but certainly the parties have not so said. The instruments plainly say, "I will claim nothing more from the estate," but it was sought to prove this is not what was meant or intended, and that it meant something just the reverse of what the language used clearly and without doubt imports. To state the proposition in the strongest possible language in favor of the defendants, it amounts to this: The decedent, without fraud, obtained the writings for a certain purpose and use, which the writings themselves clearly and plainly contradict. The effect of the proposed testimony was to contradict such writings.

III. We know of no reason why these writings should not have the force and effect their terms indicate. Why, or upon what principle, should such contracts be declared void? why, even, should any technical rule be permitted to render them nugatory? The defendants had the power and ·capacity to determine whether what they obtained was better than a mere expectancy, or whether something was better than nothing, and certainly there is no rule that will prevent a parent from thus disposing of his property.

By these instruments, the defendants, for what appeared to them a sufficient consideration, covenanted not to claim any interest in the estate. It may be nothing passed at the time,

but upon the descent being cast, the instruments took effect, and operated by way of estoppel. There is no difference in principle between this case and *Fitch v. Fitch*, 8 Pick., 480; *Trull v. Eastman*, 3 Met., 121; and *Walker v. Walker*, 67 Penn. St., 185.

The rule recognized in these cases is that an heir may, with the knowledge of his ancestor, sell or contract in relation to his expectancy or right to the property of such ancestor, and that such contract is valid and binding.

IV. L. H. Jones signed the writing on the 21st day of April, 1873. He was then "about eighteen years old." He was married in August 1873, at which time he attained his majority. Rev., Sec. 2539, Code, Sec. 2237.

4. ——: minor: disaffirmance.

A minor is bound by his contracts unless he disaffirms them within a reasonable time after he attains his majority and restores all the money or property received by him by virtue of the contract and remaining within his control at any time after attaining his majority. Rev., Sec. 2540, Code, Sec. 2238.

What is a reasonable time within the meaning of this statute must of course depend on the circumstances of each case. *Jenkins v. Jenkins*, 12 Iowa, 195.

As we have seen, the defendant attained his majority in August 1873, the deceased died on the 2d day of December of the same year, and the subsequent agreement was made on the 29th day of January, 1874.

The defendant took no steps looking to a disaffirmance during the lifetime of his father, although four months intervened between his majority and such death. If he had disaffirmed the contract during such time his father might have made some disposition of his property by will other and different from that provided by statute, in case no such will was made.

It must be presumed, we think, that the decedent intended at the time the contract was made to have it stand as the disposition of his property, so far as the defendant was concerned, in case no will was executed. There is no evidence tending

to show that his intent as evidenced by the contract had in any degree changed at the time of his death. It would seem, therefore, that there is much force in the thought that if the contract was disaffirmed at all, it should have preceded the death of said Jones. But, conceding it could be done afterward, and also conceding the execution of the subsequent agreement was such a disaffirmance, nearly two months expired after the death of said Jones until that was executed, thus making altogether about six months, during which time the said defendant made no move in the direction of the disaffirmance of the contract. There are no special circumstances shown why this should not have been done earlier.

It is not shown that any influences were brought to bear to prevent it, nor is his capaci'y for understanding business shown, or that for any reason he could not conveniently have exercised his rights. Under these circumstances we feel constrained to hold that the disaffirmance was not made within a reasonable time.

AFFIRMED.

ADAMS, J., dissents from the foregoing opinion in so far as it holds that the defendant, L. H. Jones, did not disaffirm within a reasonable time.

BECK, J., *dissenting.*—I am unable to concur in the foregoing opinion, and will give briefly the grounds of my dissent.

The instruments, under which the defendants are, by the decree of the Circuit Court, deprived of an interest in the estate of their deceased father, cannot be regarded as releases. They are in effect acknowledgments of the receipt of certain property, which the heirs agreed should be regarded as full satisfaction of their claims upon their father's estate. What they received, if anything, was an advancement, and the writings witness the receipt of the same, and declare that no further claim upon their father's estate, or rather no claim shall be made thereon, the advancements being regarded as in full satisfaction for their respective shares of the estate. The instru-

ments are not releases in the true sense of the word. They released no interest and conveyed no right to the father, because they related to a subject in which the parties executing them had no interest and held no right. A child has no interest in his father's estate before his death, for two reasons: Before death there is no such thing as an estate, applying the word to the property of a deceased person. To hold an interest in an estate one must be an heir. *Nemo hæres est viventis.*

For these and other reasons I think the instruments are writings evidencing advancements and nothing more. Regarding the instruments in this character, can they be contradicted or explained by parol evidence?

Questions of advancement must always be determined by arriving at the intention of the ancestor at the time donation was made to the heir. If the father in the case before us intended that the property transferred to the defendants should be held as an advancement, that intention the law will carry out. It will not, in executing the writings, take from defendants property in his estate which the father intended they should possess. This intention, in my opinion, may be shown by declarations of the father, whether oral or in writing, which are a part of the *res gestæ*. This position is not inconsistent with the rule of evidence which forbids instruments in writing to be contradicted or explained by parol proof. The instruments in question are not, as I have shown, releases or conveyances. They have no higher character than that of being evidence of an advancement. The evidence rejected by the court, it cannot be said, would contradict or vary the legal effect of the instrument. They are in law evidence of advancement; the parol proof gives them no other character.

But I understand the rule to be that declarations of the parties interested which are of the *res gestæ* are admissible to show that a donation by a parent to a child was intended as a gift, loan or advancement, although the act is evidenced by a written contract.

The principles I have here briefly stated, are discussed in Bingham on Descents, pp. 344–405, and many authorities are cited, which, in my opinion, support the view I have advanced.