In re Estate of John I. Nelson.

E. J. Engeldinger, Administrator, Appellee, v. Swift & Company et al., Appellants.

No. 40564.

November 18, 1930.

*Lee, Steinberg & Walsh,* for appellants.

*Nichol & Nichol,* for appellee.

Grimm, J.—On May 1, 1929, Swift & Company and the Iowa Packing Company, corporations, each filed in the estate of John I. Nelson, deceased, in Story County, Iowa, applications for orders of the court directing the administrator to account to the applicants for the proceeds received by the administrator from the collection of accounts previously assigned by John I. Nelson, as security, to the said claimants. On the 20th day of June, 1929, the administrator filed an amended and substituted resistance to

the applications of Swift & Company and the Iowa Packing Company.

The facts are not much in dispute, and we have here largely a question of law. It appears from the record that John I. Nelson was engaged in the retailing of groceries and meats in Ames, Iowa. During the latter part of 1928 and the fore part of 1929, he became indebted to Swift & Company in a sum in excess of $3,800, and he also became indebted to the Iowa Packing Company in a sum in excess of $2,500. These accounts were for merchandise sold to Nelson. On February 12, 1929, the said packing companies sent an agent to Ames to collect the accounts or get security for the same. On that day, Nelson executed and delivered to these companies separate assignments, the material parts of which are as follows:

"That the undersigned, in consideration of one dollar ($1.00) in hand paid, the receipt whereof is hereby acknowledged, and other (good and valuable) consideration, has assigned, transferred and set over, and by these presents does assign, transfer and set over unto Swift & Company, Omaha, all book debts, accounts, choses in action, now due or accruing due, to the undersigned from [here follow names of parties], and also all book debts, accounts and choses in action which may at any time hereafter become due and owing, to the undersigned from the above-listed customers."

The instrument then constituted Swift & Company the authorized agent and lawful attorney, irrevocably, to collect these claims. The instrument further continues:

"This assignment is executed as a continuing security for the payment of any indebtedness, liability or liabilities of the undersigned to said Swift & Company, due or to become due or that may have been heretofore or may be hereafter contracted by said undersigned."

A similar instrument was executed to the Iowa Packing Company. On the same day, Nelson executed and delivered to the agent of these packing companies what is termed a "trust receipt," by the terms of which it was attempted to turn back these accounts to Nelson for collection and account. The assignments were not recorded. None of the customers were notified

of the assignment, nor was any notice given to other creditors. Nelson was explicitly authorized in writing to retain possession of the accounts, and to continue collecting the same in the usual course of business, such authorization being set forth in the so-called "trust receipts."

It clearly appears from the record that it was understood and intended that the assignments were to be kept secret and confidential, and that it was intended by the parties that neither the retail customers nor the wholesale or other creditors of Nelson should learn of the assignments.

Nelson died March 29, 1929. Many of the accounts in question were collected in whole or in part by Nelson, and the proceeds retained and used by him. Many of the items were active accounts, on which payments were made from time to time by customers, and additional items were added for goods delivered. Many of the accounts, as they stood on the books as on the date of Nelson's death, were collected in whole or in part by the administrator. The appellants claim that the administrator is accountable for all moneys collected on these accounts, both as they stood on the date of the assignment and as they subsequently accrued, whether they were collected by the administrator himself or by Nelson in his lifetime.

It clearly appears that the estate is wholly insolvent, and can pay only a small percentage on the claims filed. The money collected by Nelson on these accounts was dissipated by him, there being no showing that any of these proceeds came into the hands of the administrator. If it be conceded that Nelson, in the collection of accounts, acted as an agent for the packing companies and received and held the proceeds in trust for them, no part of such funds has been traced into the hands of the administrator.

I. The most important question in this case is whether the assignment to the packing companies by Nelson on February 12, 1929, passed anything to the packing companies as to the indebtedness of Nelson's customers accruing after February 12, 1929. The courts of this country are, to some extent, out of harmony on this question. Some confusion arises in considering the cases, by reason of the existence of statutes bearing upon the subject in various states.

Section 9453 of the 1927 Code, found in Chapter 422, entitled

"Assignment of Accounts and Nonnegotiable Instruments," provides as follows:

"*Assignment of open account.* An open account of sums of money *due* on contract may be assigned, and the assignee will have a right of action thereon in his own name, subject to such defenses and counterclaims as are allowed against the instruments mentioned in the preceding section, before notice of such assignment is given to the debtor in writing by the assignee." (Writer's italics.)

In *Melcalf v. Kincaid* (1893), 87 Iowa 443, Kincaid made a written assignment dated October 29, 1889, for the months of October, November, and December, 1889, and January, February, March, and April, 1890, to the auditor of the Union Pacific Railroad Company. He was at that time in the service of the railroad company. This court said, among other things:

"The first question certified, in substance, is whether one can assign his future earnings so as to vest the same in his assignee, free from the claims of attaching creditors; and if so, can a valid assignment be made of wages in the absence of a contract under which the wages are to be earned? * * * It has been held that a school teacher who was indebted to another had the legal right to make an assignment of his wages to *accrue under his contract* with the district, * * * *Johnson v. Pace*, 78 Ill. 143; *Ruple v. Bindley*, 91 Pa. St. 296. So it has often been held that, when one assigns wages to be earned under an *engagement then existing,* and when he was actually at work thereunder, at a fixed price, payable at a certain time, though no contract of employment existed for any stipulated time, yet such an assignment, if accepted, would be good as against a garnishment by creditors of the assignor. *Taylor v. Lynch,* 5 Gray 49; *Lannan v. Smith,* 7 Gray 150; *Hartley v. Tapley,* 2 Gray 566; *Weed v. Jewett,* 2 Metc. (Mass.) 608; *Brackett v. Blake,* 7 Metc. 335; *Emery v. Lawrence,* 8 Cush. 152; *Thayer v. Kelley,* 28 Vt. 19; *Augur v. Packing Co.,* 39 Conn. 536; *Garland v. Harrington,* 51 N. H. 409; *Wallace v. Chair Co.,* 16 Gray 209; 3 Pom. Eq. Jur., Section 1286; Drake, Attachm., Section 612; 1 Am. and Eng. Encyclopedia of Law, p. 828. * * * It is equally well settled that an assignment of wages expected to be earned in the future, and not based upon an existing contract, engagement, or employment,

is void. *Mulhall v. Quinn,* 1 Gray 105; *Jermyn v. Moffitt,* 75 Pa. St. 402; *Ruple v. Bindley,* 91 Pa. St. 296; *Morrill v. Noyes,* 56 Me. 458; *Runnells v. Bosquet,* 60 N. H. 38; *Lehigh Valley Railroad Co. v. Woodring,* 116 Pa. St. 513; 9 Atl. Rep. 58. The distinction between the two classes of cases is this: In the one, an attempt is made to assign something which exists in expectancy only. In such a case it is apparent that there is nothing to assign. The expectancy may never become a reality. The earning of wages or the accumulation of property in such a case will depend on the ability of the assignor to procure employment in the future. There is no present employment which may reasonably be expected to result in the earning of wages. In the other class of cases, one has entered into a contract or upon an employment whereby, in the ordinary course of events, wages will be earned or property acquired as the direct result of the contract, employment, or engagement. The true rule is that an assignment of wages to be earned is good if accepted, and if, at the time it is made, there is an existing engagement or employment by virtue of which wages are being, and in future may reasonably be expected to be, earned, even though there is no contract or fixed time of employment. And in the case of a contract for work or labor, an assignment of the fruits of it may be good though the labor to be performed under it has not yet been commenced." (Writer's italics.)

See, also, *Seymour v. Aultman & Co.,* 109 Iowa 297; *Carey v. Chase,* 187 Iowa 1239.

In *Taylor v. Barton Child Co.* (1917), 228 Mass. 126 (117 N. E. 43), the court had before it a suit in equity to enforce rights of plaintiff under an assignment of book accounts made as security for a loan. It was contended that the assignment was for both present and future book accounts. The court said:

"The crucial question is whether the assignment of book accounts which are to come into existence in the future in connection with an established business will be enforced in equity against a trustee in bankruptcy. It is a well recognized principal of the common law that a man cannot sell or mortgage property which he does not possess, and to which he has no title. The vendor must have a vested right in personal property, in order to be able to make a sale of it. 'A man cannot grant or

charge that which he hath not.' *Jones v. Richardson,* 10 Metc. 481, 488; *Moody v. Wright,* 13 Metc. 17; *Leverett v. Barnwell,* 214 Mass. 105, 109. The ground of our decisions may be stated shortly. There can be no present conveyance or transfer of property not in existence, or of property not in the possession of the seller, to which he has no title. A sale of personal chattels is not good against creditors unless there has been a delivery.''

The court further said:

''There is an exception at the common law to the effect that one may sell that in which he has a potential title, although not present actual possession. The present owner might sell the wool to be grown upon his flock, the crop to be harvested from his field, or the young to be born of his herd, or assign the wages to be earned under existing employment. *Kerr v. Crane,* 212 Mass. 224, 229; *St. Johns v. Charles,* 105 Mass. 262; *Farrar v. Smith,* 64 Maine 74, 77; *M'Carty v. Blevins,* 5 Yerger [Tenn.] 195; *Dugas v. Lawrence,* 19 Ga. 557. * * * That principle of the common law has never been carried so far as to include the case at bar. The catch of fish expected to be made upon a voyage about to begin cannot be sold. *Low v. Pew,* 108 Mass. 347. There can be no sale of the wool of sheep, the crop of a field, or the increase of herds not owned, but to be bought, and there can be no assignment of wages to be earned under a contract of employment to be made in the future. *Eagan v. Luby,* 133 Mass. 543; *Citizens Loan Association v. Boston & Maine Railroad,* 196 Mass. 528, 531.''

In *O'Niel v. Wm. B. H. Kerr Co.* (1905), 124 Wis. 234 (102 N. W. 573, 70 L. R. A. 338), one Helmke executed and delivered an instrument as follows:

''North Lake, Wis., March 29, 1901.
''For the purpose of obtaining credit from the *Wm. B. H. Kerr Company,* I hereby authorize you to pay said Wm. H. B. Kerr all my part of the milk delivered to your factory.
''To Mike Murphy. Heinrich Helmke.''

It appeared that the writing was executed for the purpose of obtaining credit for goods and merchandise to be purchased from the Kerr Company, and that the defendant Helmke purchased goods from the company after the date of the order. It

appeared that no contract existed between Helmke and Murphy whereby Helmke agreed to deliver milk to Murphy for any future period, nor did it appear that Murphy was obligated to receive from Helmke milk for any future period after March 29, 1901. The court said, among other things, commenting on a previous holding by that court:

"The ruling in this and subsequent cases is upon the ground that a party must have an existing vested interest in the property sought to be conveyed, to give the transfer effect in the law, and that a mere possibility or expectancy of acquiring property, 'not coupled with an interest, is insufficient.' It is well settled that a potential interest in property is sufficient to support such a transfer. This principle is illustrated in the case of *Low v. Pew*, 108 Mass. 347, wherein the court applied it to assignments of future wages or earnings; holding that an assignment of future wages, where there is no contract for service, is invalid. On the other hand, if a person is under contract for service, he may assign his future earnings growing out of such contract. 'The distinction between the cases is that in the former the future earnings are a mere possibility, while in the latter the possibility of future earnings is coupled with an interest; and the right to them, though contingent and liable to be defeated, is a vested right.' Under the facts of this case, Helmke was under no obligation to deliver milk to Murphy after the date of the order. The expectation that he would do so may have existed, but was coupled with no vested interest. This made it a mere possibility, and created no actual or potential interest in any of the proceeds of the milk he afterwards delivered; thus rendering the order ineffectual as a legal transfer."

Appellants rely mainly upon the following cases: *Jones v. Jones*, 46 Iowa 466; *Mally v. Mally*, 121 Iowa 169; *Richey v. Rowland*, 130 Iowa 523; *Betts v. Harding*, 133 Iowa 7; *Edler v. Frazier*, 174 Iowa 46. Upon examination, it will be found that each of these cases deals with an assignment of an expectancy in an estate. It will be readily seen that, by virtue of the law, the heir has an actual existing interest, although not a vested interest, in the estate. True, the interest may be destroyed in many ways, as by a will, but nevertheless, by virtue of the law, the heir has something more than a mere possibility. Appellant lays stress

upon *Atlantic Tr. Co. v. Carbondale Coal Co.*, 99 Iowa 234. Upon a close examination of this case it will be found that the assignment involved, so far as it pertains to future obligations, was followed by an actual delivery after the obligation had accrued, and therefore is not in point.

In *Peterson v. Ball*, 121 Iowa 544, the assignor of wages was actually then in the service out of which the wages arose. *Cogan v. Conover Mfg. Co.*, 69 N. J. Eq. 809 (64 Atl. 973, 115 Am. St. 629), was also a case in which an existing contract was the basis for the interest assigned. *Field v. Mayor*, 6 N. Y. 179 (57 Am. Dec. 435), cited by the appellants, and decided in 1852, seems to support appellants' contention.

In the case at bar it will be noted that there is no claim or evidence that any of the customers of Nelson were under any contract whatsoever, on the date of the assignment, to purchase more goods from Nelson, nor is there any claim or evidence that Nelson, on February 12, 1929, was under any contract or obligation to deliver any goods of any kind to any of his then customers. It, therefore appears that Nelson had only mere possibilities of accounts. There was no interest based upon any contract or agreement, nor was there any interest created by law, such as arises in the case of an heir. Nelson, as to all items of account accruing after February 12, 1929, had nothing to assign, and the asignment was void.

II. If it be assumed, though not decided, that equity will, under any circumstances, recognize and enforce an assignment of future possible book accounts, such as those which arose after the assignment in this case, nevertheless it is manifest that, under the particular facts in this case, such an assignment will not be thus recognized or enforced.

We find no reversible error on the part of the lower court, and the cause must be, and is,—*Affirmed*.

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.