## MORRIS PLAN BANK OF CLEVELAND, Appellant v EVATT, Appellee.

Board of Tax Appeals

No. 3681. Decided January 20, 1943.

Hauxhurst, Inglis, Sharp & Cull, Cleveland, for appellant.

Thos. J. Herbert, Atty. Gen., Columbus, and Perry L. Graham, Asst. Atty. Gen., for appellee.

## OPINION

This cause and matter is before the Board of Tax Appeals on an appeal filed by the appellant, above named, under date of March 28, 1941, from a corrected tax assessment made by the tax commissioner under date of March 7, 1941, assessing as taxable deposits for the tax year 1940 certain deposits which had been theretofore made in the appellant bank by borrowers for the purpose of securing the repayment to the bank of moneys which had been loaned by the bank to many and various persons in the conduct of its business as a special plan bank. The case was submitted to the Board of Tax Appeals upon a stipulation of the facts in the case and upon the arguments and briefs of counsel.

Upon consideration of the case as thus submitted the Board of Tax Appeals finds that on or about the 11th day of March, 1940, the appellant filed its intangible and personal property tax return as a financial institution for said year. In said tax return the appellant, in listing its deposits as such financial institution as required by the provisions of §§5406 et seq. GC, set out therein as of November 2, 1939, deposits in the aggregate amount of $2,119,861.05, which deposits were listed in said tax return as "deposits assigned to us on loans". As to this, the Board further finds, however, that the appellant in making said return did not include said deposits aforesaid in the list of taxable deposits upon which it was required to pay taxes at the 2 mill rate provided by law. In and by the corrected tax assessment. certificate of the tax commissioner under date of March 7, 1941, said "assigned" deposits in the amount above stated were included in the list of the taxable deposits of the appellant for said year and a tax was thereby extended against such deposits at the rate provided by law. The appeal filed herein by the appellant is from this assessment order of the tax commissioner including as taxable deposits of said bank such "assigned" or "loan" deposits in the stated amount of $2,119,860.00.

It appears that the appellant is a bank incorporated and organized under the provisions of §§710-38 et seq. GC; and that the

purposes of said bank are set out in its articles of incorporation as follows:

"The purposes for which said corporation is formed are to conduct a commercial bank business, a savings bank business, a special plan bank business and a safe deposit business, and to do all things necessary or incident thereto, pursuant to the provisions of the General Code of Ohio and any and all acts amendatory or supplementary thereto."

Inasmuch as the appellant bank, among other things, is organized and doing business as a "special plan" bank, it is pertinent to note with respect to the questions presented in this case the provisions of §710-180 GC, which are as follows:

"Any bank organized and doing business as a special plan bank, and which by the terms of its contract with its depositors shall provide for the receipt of deposits which are not payable unconditionally upon demand or at a fixed time, may in the case of any loans made in reliance for repayment on the character and earning capacity of the borrower in addition to discounting interest at the rate allowed by law, require such borrower as security for such loan to make periodical deposits in such bank during the period of the loan, with or without an allowance of interest on such deposits, and with or without additional security, and may purchase any obligation payable in installments from the owner thereof, with or without recourse on such owner, and such transactions shall not be deemed usurious. A special plan bank shall keep only the same reserve as is required of savings banks. and no reserve shall be required against deposits hypothecated to secure indebtedness of the depositor to the bank. A special plan bank may invest its funds, not employed in its ordinary special plan business, as provided in §710-140 GC subject to the same limitations therein provided and referred to."

Pursuant to the authority granted by the provisions of §710-180 GC, above quoted, the appellant, as a special plan bank, in loaning money to a borrower took from such borrower a negotiable promissory note with the required signatures; which promissory note, so far as its terms are pertinent in the consideration of the question presented on this appeal, was and is in form as follows:

. "_____after date, for value received, we, the undersigned, jointly and severally promise to pay to the order of THE MORRIS PLAN BANK OF CLEVELAND, at its office, 921 Huron Road, in the City of Cleveland, the sum of_____Dollars ($_____) in lawful money of the United States, having deposited herewith as collateral security for the payment of this and every other liability of the

depositor thereof to said bank, direct or contingent, due or to become due, or which may hereafter be contracted or existing, a Deposit Agreement, bearing the above number and stipulating for $_____deposits to be made_____hereafter_____

_____

_____

_____

together with all other securities or credits now or hereafter in the possession of or due from said bank, belonging to any of the undersigned or in which any of the undersigned has an interest.

"The makers further promise whenever required by the holder hereof to increase the amount of security for this obligation until satisfactory to the holder; and, should this security not be increased when so required, or should the makers from any cause whatsoever not make or cause to be made the deposits required by the terms thereof on the agreement herewith hypothecated, or in the event of the bankruptcy, insolvency, failure in business or death of any maker hereof, then, at the option of the holder, this obligation, whether due according to its face or not, shall, with or without notice, become immediately due and payable, notice of the exercise of such option being hereby expressly waived. Each of the undersigned hereby assents to the addition of co-makers subsequent to his signature hereto, with or without notice, and agrees that his liability hereon shall not be affected thereby.

"For the purpose of enforcing the payment of this obligation, the said holder shall have full power and authority to sell, assign, collect, compromise, transfer and deliver all of the said collateral, whether original or additional, or so much thereof as may be requisite or as the holder may deem advisable, and apply the proceeds, or so much thereof as may be necessary, to the payment of this note, and the necessary expenses and charges in selling the same, and the balance of the proceeds, if any, to the payment of any other liability of the depositor of the said collateral to the holder, and render the balance, if any, to the depositor of the said collateral. Such sale may be made wherever the said holder may direct, and may be public or private, or both, with or without advertisement, and with or without notice to or demand on the makers or the depositors of the said collateral, or any of them, demand and notice being hereby waived, and said holder may become the purchaser of any or all of the said collateral at any such public sale. It is understood and agreed, however, that the holder shall not be compelled to resort first to the collateral hypothecated for the security of this obligation, but may at its election require said obligation to be paid by any maker or makers hereon. This note shall bear interest at the rate of eight per cent (8%) per annum after maturity until paid."

The deposit agreement referred to in the promissory note, which

is signed by the borrower and delivered to the bank with said note, is in card form with blank spaces therein for the notation of the amount and date of the deposits made by the borrower under said deposit agreement, which deposits are therein referred to as "payments". This deposit agreement further provides as follows:

"(1) The undersigned hereby agrees to deposit at the office of the Bank at least $_____each_____on_____of such_____ until $_____shall have been so deposited. All amounts so deposited shall be applied by the Bank to the payment of the amount due the Bank on the loan to secure which this Deposit Agreement·is assigned, either on the maturity of the note evidencing said loan, or, at the option of the Bank, at any time prior thereto when the Bank shall consider such action necessary or advisable.

"(2) If each such deposit is not made promptly as agreed a charge may be made for services performed and expenses incurred by reason of each such failure.

"(3) The undersigned hereby assigns and transfers this Deposit Agreement and all deposits made and to be made pursuant thereto, to the Bank as security and collateral for a loan of $_____ this day made to the undersigned by the Bank, receipt of the proceeds of which on the basis set forth below, is hereby acknowledged."

At the time such promissory note and deposit agreement are executed by the borrower and delivered to the bank there is given to the borrower a pass book in coupon form covering the twelve months of the year, in which the amount and date of the deposits (therein, likewise, referred to as payments) are noted. This pass or coupon book is kept by the borrower. Referring to the payments made from time to time by the borrower and noted in said deposit agreement and coupon book as made. the stipulation filed in this case sets out the following agreed facts:

"Such payments are hereinafter referred to as 'assigned deposits'. The amount of the 'assigned deposits' which has been paid by each borrower to the appellant has been applied, pursuant to the terms of the deposit agreement, either at the maturity of the borrower's note evidencing the loan, or at such other time as the appellant has deemed advisable, to the payment or reduction or amount payable on the note. In no case have they ever been paid to the borrower in money."

The aggregate amount of the "deposits" made by borrowers in the manner and for the purpose above indicated, and which were standing to the credit of such borrowers on November 2, 1939, (the date fixed by the Board of Tax Appeals for the return and assessment of taxable deposits for the year 1940) was the sum of $2,119,-861.05, as above stated; and the assessment by the tax commis-

sioner of these "deposits" in the stated amount of $2,119,860.00, is the matter complained of by the appellant in this appeal.

In the consideration of the question thus presented it is noted that §5328-1 GC, provides that "all moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, excepting as provided in this section or as otherwise provided or exempted in this title". This section is declaratory with respect to the taxation of intangible property and the different classes thereof therein mentioned; and the question as to whether these "deposits" in the amount above stated were returnable as such by the appellant bank and were assessable against it for the year 1940 is to be determined by definitive and other sections of the General Code prescribing the manner in which taxes are imposed on property of this kind. See **Chisholm v Shields, Treas., 67 Oh St 374, 378.** The return and assessment of taxable deposits made in banks and other financial institutions are provided for by §§5406 et seq., GC. By §5411 GC, provision is made for annual reports to be made by financial institutions to the Department of Taxation (tax commissioner); and by §5411-2 GC, it is provided that "the report of each financial institution shall also show the aggregate balances of taxable deposits of depositors at the end of its business on the day fixed by the tax commission of Ohio (Board of Tax Appeals) pursuant to §5411-1 GC". By §5412 GC, it is provided, among other things, that: "Upon receiving such report the tax commission of Ohio (tax commissioner) shall ascertain and assess * * * the amount of taxable deposits of such institution. Such amounts shall be assessed in the name of such financial institution." **Section 5406 GC,** which is related to the sections above noted with respect to the return and assessment of taxable deposits in banks and other financial institutions, provides that "the deposits required to be returned by financial institutions pursuant to this chapter include all deposits as defined by §5324 GC to the extent that such deposits are made taxable by §5328-1 GC." **Section 5324 GC,** provides:

"The term 'deposits' as so used, includes every deposit which the person owning, holding in trust, or having the beneficial interest therein is entitled to withdraw in money, whether on demand or not, and whether evidenced by commercial or checking account, certificate of deposit, savings account or certificates of running or other withdrawable stock, or otherwise, excepting (1) unearned premiums and surrender values under policies of insurance, and (2) such deposits in financial institutions outside of this state as yield annual income by way of interest or dividends in excess of four per centum of the principal sum so withdrawable."

Although under the statutory provisions above noted, the deposits therein referred to are returnable by the bank as a financial institution and are assessable in its name, the ultimate incidence of

the tax on such deposits is on the depositor; for, under the provisions of §5673-2 GC, taxes assessed against the bank on its deposits may be charged against such deposits; and in this view the bank is but an agent of the state for the collection of taxes ultimately payable by its depositors.

The question presented for determination in this case is whether these "deposits" aggregating in amount the sum of $2,119,-860.00 made by borrowers of the funds of the appellant bank pursuant to the terms of the several deposit agreements made by such borrowers were taxable deposits within the purview of §§5406 et seq. GC, providing for the assessment of taxes on such deposits. For, as to this, it may be observed that although ordinarily general deposits and deposits made for a specific purpose as distinguished from special deposits, have the effect of creating a debtor and creditor relation between the bank and the depositor with respect to deposits so made, and the credit thereby arising as intangible property may be taxed in the name of the depositor as the owner of the credit, such credit cannot be taxed as a deposit as against either the bank or the depositor unless such deposit has the character of a taxable deposit within the purview of §5406 GC, and as defined by §5324 GC. The "deposits" here in question were made in each instance pursuant to a deposit agreement made and entered into by and between the borrower and the bank whereby the deposits made by the borrower pursuant to said deposit agreement were assigned to the bank; and under the contractual relations existing between the bank and the borrower, the bank had the option of applying the deposits so made to the payment of the borrower's note either at the maturity thereof or prior thereto, as might be deemed advisable by the bank. Inasmuch as the deposit agreement requiring the borrower to make the deposits therein provided for, was in each instance exacted by the bank pursuant to the provisions of §710-180 GC, authorizing the bank to require the borrower to make such deposits for the security of his loan from the bank, the deposit agreement, as such, was a valid contract for the purpose above indicated; and the deposits to be thereafter made pursuant to this then existing contract could be and were legally assigned to the bank by the specific terms of the contract providing therefor, with the result that all the right, title and interest of the borrower as a depositor in and to the deposit as made, passed immediately under the assignment to the bank (**Rodijkeit v Andrews, 74 Oh St 104**; in re. Nelson, 211 Iowa, 168) ; and the deposit so made became at once a payment on the borrower's obligation to the bank. This conclusion as to the legal effect of the "deposits" so-called here in question, giving effect to the assignment of such "deposits" executed by the borrower as a part of said deposit agreement, is predicated on the assumed view that but for such assignment the periodical payments of money made by the borrower to the bank might, conceivably, be thought of as deposits as distinguished from payments as

such. However, on the facts of this case as they are here presented it may well be doubted whether, with respect to the periodical payments of money made by the borrower to the bank under his contract, the bank—and still less the borrower making such periodical payments—at any time thought of such periodical payments of money so made otherwise than as payments as such on the note theretofore executed by the borrower to the bank. In any view as to this, it is quite certain that the borrower, in making these periodical payments of money to the bank did not, as to any such payment of money so made, have any further right or interest in the money paid over by him other than to have the same credited on his loan from the bank and on the note evidencing such loan.

We conclude, therefore, that the "deposits" here in question were in fact payments made by the borrower on his loan and that this was the effect of the transaction in each case notwithstanding the fact that the bank for purposes of its own in the computation of interest to be paid by the borrower on his loan, or for other reasons, did not, apparently, formally credit such deposits as payments on the note executed by the borrower until the maturity thereof, which was after November 2, 1939, as of which date taxable deposits were to be listed and assessed for the tax year 1940. And the validity of the conclusion here reached with respect to the legal effect of these deposits, as the same were made from time to time by the borrower pursuant to the terms of his deposit agreement with the bank, is not, we believe, in anywise affected by the fact that but for the provisions of §710-180 GC, above quoted, the actual amount of interest paid by the borrower on his note to the bank measured by the rate of interest therein reserved and by the average amount of the proceeds of the loan retained by the borrower during the period of time between the making of the loan and the maturity thereof, would be clearly usurious with respect to the amount of interest so paid, as was recognized by the attorney general in the opinions of that officer referred to in the briefs of counsel. See O. A. G. 1916, Vol. II, p. 1401; O. A. G. 1937, Vol. I, p. 831. It follows from the conclusion here reached as to the legal effect of the deposits here in question, that when and as the same were made by the borrower as the depositor no legal right by way of a credit accrued to such depositor which was taxable as a deposit or otherwise against either the depositor or the bank; and for this reason the tax commissioner erred in assessing against the bank the deposits involved in this appeal.

Moreover, as before noted herein, it does not appear from the contract entered into by and between the borrower and the bank, evidenced by the promissory note and deposit agreement executed by the borrower in consideration of the loan of the bank's funds to him, that it was contemplated that the deposits made by such borrower pursuant to his deposit agreement were to be withdrawable in money by or on the order of such depositor. On the contrary, it af-

firmatively appears from said contract and from the agreed statement of facts set out in the stipulation filed herein, that such deposits did not have the character of withdrawable deposits within the purview of §5406 GC, and within the definitive provisions of §5324 GC. And for this reason, aside from that above noted, the tax commissioner erred in assessing these deposits against the appellant bank.

It is, therefore, by the Board of Tax Appeals considered and ordered that the order of the tax commissioner assessing the deposits complained of in the appellant's said appeal herein be reversed, and that a corrected tax certificate be issued by the tax commissioner eliminating the deposits herein complained of from the list of taxable deposits of the appellant bank for the tax year 1940.

BOARD OF TAX APPEALS.